## KEELY *v.* MOORE.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 55.    Argued November 9, 1904.—Decided December 19, 1904.

The signature of a resident of the District of Columbia to a will executed abroad was witnessed on the day of execution by two witnesses; on the day following an American vice consul signed, as such and under seal, a certificate that the testator had appeared before him and acknowledged the will and his signature thereto. It did not state that the testator signed in his presence. The law in the District of Columbia required three witnesses in testator's presence, but did not require the testator to sign in presence of witnesses. The will was attacked also on grounds of testator's insanity and undue influence on the testator who had, previous to the execution of the will, been for a short time in an insane asylum. In an action affecting title to real estate there were issues sent to a jury and the title under the will sustained. *Held*, that:

Under the circumstances in this case the jury might properly draw the inference that the vice consul executed the certificates in the ordinary course of business and in presence of the testator.

Although a notary taking an acknowledgment as required by law is not, in the absence of separate signature as such to be regarded as a witness, inasmuch as the certificate in this case was not required by law and was unnecessary, it was, together with the description appended to the vice consul's name, immaterial and could be disregarded as surplusage and the vice consul's signature regarded as that of a witness in his unofficial capacity.

The application of a relative, and the certificates of physicians, for the admission of testator to an insane asylum, from which he had been released apparently in sound condition prior to the execution of the will, were properly excluded both because not sworn to and given in a different proceeding and on a different issue.

There was no error in submitting the question of testator's insanity to the jury with the instruction that if they found that the insanity was permanent in its nature and character the presumptions were that it would continue and the burden was on those holding under the will to satisfy the jury that he was of sound mind when it was executed.

A man may be insane to the extent of being dangerous if set at liberty and yet have sufficient mental capacity to make a will, enter into contracts, transact business and be a witness. ·

THIS was an action of ejectment brought in the Supreme Court of the District by grantees of the heirs at law of William Thomson against Joseph H. Moore and the firm of Thomas J. Fisher & Company, agents of Mary Cecelia and Georgiana Hawkes Thomson of the county of Kent, England, devisees under the will of William Thomson, to recover possession of an undivided ninety-one one-hundredths of certain real estate in the city of Washington. Upon the trial it was admitted that William Thomson died in Southampton, England, in 1887, seized of the lot in question; that he was born in and was a citizen of the United States, leaving no issue or descendants. Plaintiffs had acquired the title of the heirs at law, and the defendants were in possession of the lot as life tenants under his alleged will.

The validity of the will and the due execution thereof were contested by the plaintiffs for reasons hereinafter indicated in the opinion. The trial resulted in a verdict for the defendants, upon which judgment was entered, and affirmed by the Court of Appeals. 22 D. C. App. 9.

*Mr. Hugh T. Taggart* and *Mr. C. C. Cole*, with whom *Mr. Leo Simmons* was on the brief, for plaintiffs in error.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker*, for defendants in error.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

The validity of the will was attacked upon three grounds: 1st, that it has not the requisite number of witnesses to pass real estate in this District; 2d, that the testator was of unsound mind; 3d, that undue influence had been exercised by one of the designated executors, and others.

Thomson was a resident of Washington, but at the time of and for some years prior to his death was the American consul at Southampton, England. One John H. Cooksey, a resident merchant at Southamptan, was his vice consul. The will was prepared by Walter R. Lomer, a resident solicitor, and was executed at his office February 24, 1886. By this will he devised the property in controversy to the appellees, Mary Cecelia Thomson and Georgiana Hawkes Thomson, his cousins, of Kent County, England, jointly for their joint lives and to the survivor of them, with remainder to Mary Cunningham Roberts, of London, for life, and remainder in fee to her only son. The will, which was executed in duplicate, was written upon two sheets of paper, to each of which the testator affixed his name. It was witnessed in the usual form by Lomer and by one Linthorne, a clerk in his office, who attached their signatures in the presence of and at the request of the testator, and in the presence of each other. On the day after the execution of the will Thomson again went to the office of his solicitor, Lomer, who wrote a certificate of acknowledgment in the margin of the second and last page of the will, which was signed by Cooksey, the vice consul.

The original will, being of record in the Probate and Admiralty Division of the High Court of Justice in London, could not be produced, but was proved by a certificate and examined copy. The attestation clause and the certificate were as follows:

"Signed and acknowledged by the said William Thom-

son, the testator as and for his last will and testament in the presence of us, both being present at the same time, who at his request in his presence, and in the presence of each other have hereunto subscribed our names as witnesses.

"WALTER R. LOMER,
" *Solicitor, Southampton, Eng.*
"R. ROUPE LINTHORNE,
" *His Articled Clerk.*"

"I hereby certify that William Thomson, consul at Southampton for the United States of America, attended before me this 25th day of February, 1886, and acknowledged the foregoing paper writing contained in two sheets of paper as his last will and testament and that the signature 'Wm. Thomson' at the foot thereof is in the proper handwriting of the said William Thomson.

[SEAL U. S. CONSUL]          " JOHN H. COOKSEY,
" *Vice Consul United States of America.*"

The execution of the will was proved by the two subscribing witnesses, Lomer and Linthorne, and the certificate by proof of the death of Cooksey, and the genuineness of his signature. This was proper. *Clarke's Lessee* v. *Courtney*, 5 Pet. 319; *Stebbins* v. *Duncan*, 108 U. S. 32. At this time there was in force in this District the fifth section of the act of 29 Charles II., chapter 3, which had been adopted in Maryland in 1798, and carried into this District as section 4, chapter 70, of the compiled Statutes of 1894. It provided as follows: "All devises and bequests of any lands or tenements, devisable by law, shall be in writing, and signed by the party so devising the same, or by some other person in his presence, and by his express directions, and shall be attested and subscribed in the presence of the said devisor by three or four credible witnesses, or else they shall be utterly void and of none effect."

The object of the certificate in question is not entirely clear, though from the fact that Thomson took the will away with

him after its execution, and stated that he would attend before the consul general at London and obtain the requisite certificate, it would seem that he thought the certificate was necessary to the proof of the will in another country. He did not go to London, however, but called again at Mr. Lomer's office, with the request that he prepare the requisite certificate, which he afterwards procured Mr. Cooksey to sign. The certificate was not offered as proof that the will was a copy of the original, since it was annexed to the original, and we can consider it only as proof as to what it contains. It certifies, in substance, that the testator attended before Cooksey upon the day following the date of the will, acknowledged it to be his last will and testament and that the signature is genuine. Whether he intended to certify that Thomson acknowledged his signature to be genuine, or that he, Cooksey, certified that it was genuine, is somewhat uncertain; but if the words "Vice Consul of the United States of America," which are merely superfluous, were omitted, there would be no failure to comply with the statute, unless in the omission to certify that Cooksey, the certifying officer, "attested and subscribed in the presence of the said devisor." But as it appears that Thomson, not knowing when he would be in London, took the certificate to the vice consul, and that the latter signed it, the jury might properly draw the conclusion that it was signed in the testator's presence. This would be the usual course of business, and the presumption is that Cooksey conformed to it and to his duty as a certifying officer.

The certificate was probably prepared under the belief that wills, like deeds, made in a foreign country must be executed and acknowledged before some foreign official, or "before any (some) secretary of legation or consular officer of the United States," (Rev. Stat. section 1750; Compiled Statutes D. C. chapter 58, section 6); but as such certificate was unofficial and contributes nothing as such to the validity of the will, it can only be looked upon as the affirmation of an ordinary witness to the facts therein stated. No particular form of attestation was

necessary, as appears to be the case in England and in several States of the United States, and if the certificate of Cooksey had been written at the foot of the will and signed by himself and by the two witnesses, Lomer and Linthorne, it would have been a sufficient attestation. How, then, can it be regarded as insufficient when an attestation in one form is signed by two witnesses and an attestation in another form by a third? Bearing in mind that the certificate, if given any force at all, must be considered an attestation, we do not think that the fact that it may have been written and signed under a mistaken impression as to its necessity and purpose, vitiates it as an attestation. What use was intended to be made of it is immaterial, if it were useless for any purpose as an official certificate. The facts certified are appropriate to the attestation of the instrument, and, if true, we see no reason for holding it to be invalid as an attestation, because it was signed under the impression that it was necessary for some possible purpose as a certificate.

The case of *Adams v. Norris*, 23 How. 353, is much in point. This was an action of ejectment for a parcel of land in California. Plaintiffs claimed through the heirs at law of one Grimes; defendants, through the devisees in his will. The law required three witnesses to the validity of the will. Two of the witnesses signed in the usual manner, but above their signatures and beneath that of the testator was written "Before me, in the absence of the two alcaldes, Roberto T. Ridley, Sindico." The sindico was counted among the witnesses, the court saying: "We comprise among the witnesses to the will, Ridley, the sindico. It does not appear that a sindico was charged with any function in the preparation or execution of testaments by the law or custom of California. Nor is it clear that the sindico in the present instance expected to give any sanction to the instrument by his official character. He attests the execution of the will, and we cannot perceive why the description of himself, which he affixes to his signature, should detract from the efficacy of that attestation." As it did not

appear that the sindico or the two alcaldes were charged with any special duties, it was practically held that the certificate of acknowledgment, and the official character of the sindico, might be disregarded, and the signature treated as an attestation.

In the case of *Clarke* v. *Turton,* 11 Ves. Jr. 240, the will was executed abroad. It appears that three witnesses were required, apparently under the same act of Charles II as in this case. The third signature was, as in this case, that of the vice consul, whose attestation was considered necessary to the validity of the act. The case is insufficiently reported, but the court held that the attestation was a memorandum of the vice consul, to operate as a certificate, " a separate act in his public character, and sealed with his official seal; and therefore it could not be said he subscribed as a witness." The question upon that point was sent to law, but it does not appear what disposition was made of it. It appears that the certificate was an official act, and treated as necessary, but the report fails to show what it contained, and in the absence of such showing the case is of little value.

The applicability, and to some extent the authority of this case, is somewhat weakened by that of *Griffiths* v. *Griffiths,* L. R. 2 P. & D. 300. The will was signed by the testator in the presence of two witnesses, who signed their names in his presence—one opposite the word " Executors " and the other opposite the word " Witness." There was no attestation clause to the will. The deceased intended one of the witnesses to be his executor, and asked him to sign his name *in that character.* Lord Penzance held that such person did not sign the will exclusively as executor, but that he also intended by his signature to affirm that the deceased executed the will in his presence, and that consequently the will was valid. Somewhat to the same effect is *Pollock* v. *Glassell,* 2 Gratt. 439.

Conceding the general rule to be that witnesses must intend to attest the will *as witnesses,* the inference is strong that Cooksey did so in this case, as he certifies to the genuineness of the signature of Thomson and to the acknowledg-

ment of the will in his presence; and these are what would have been required by the law of this District had the instrument been a deed. It is argued that Cooksey did not intend to attest the will, but merely to sign the certificate; but the certificate of what? Only the fact that the will was acknowledged in his presence and that the signature was genuine. This is precisely the object of an attestation, and as an attestation we think it must be regarded. He may have supposed his official certificate of acknowledgment necessary to the execution of a will in a foreign country, but as he did certify personally to such acknowledgment the addition of his official title adds nothing to and takes nothing from the weight of his attestation. We must conclude that he intended to certify exactly what he did certify, and we are giving it exactly the effect he intended to give it.

If the certificate were an official act and material as a separate acknowledgment of the execution of the will, as in the acknowledgment of a deed, the case would be different, since it has never been supposed that a notary, who takes an acknowledgment of a deed, could be counted as a witness to the deed without a separate signature. But here the certificate was a wholly unofficial act, and we see no objection to disregarding the words "Vice Consul of the United States," and treating it as an acknowledgment of the execution before a competent witness. The acknowledgment of a will is really a feature of the attestation. The statute did not require that the devisor should sign the will in the presence of the witness, but that the witness should sign in the presence of the testator.

2. The evidence of Thomson's insanity was quite unsatisfactory. It appears that during the autumn or early winter of 1885 he was seized with an acute mania, and on December 15 was committed to a private insane asylum as a lunatic, upon the certificate of two physicians, and at the request of a cousin named James E. Cunningham, a merchant of London, who appears to have taken temporary management of his affairs. He remained in the asylum about six weeks, and

on February 1, 1886, somewhat more than three weeks before
he executed his will, was discharged as probably cured—in
reality granted a leave of absence on probation. The belief
in his cure being justified by his subsequent conduct, a formal
order of discharge was entered on the record of the asylum
on June 26, 1886. Lomer and Linthorne, the witnesses who
were present at the execution of the will, and Septimus
Cooksey, the son of the vice consul, all testified to the mental
capacity of the testator at that time.

In this connection exception was taken to the exclusion of
the application of James E. Cunningham for the admission of
Thomson to the insane asylum, and of the certificate of the
two physicians as to his insanity. These were properly ex-
cluded, not only because they were unsworn testimony, but
because they were given in a different proceeding and upon a
different issue. Thomson may have been insane to the extent
of being dangerous if set at liberty, and yet may have had
sufficient mental capacity to make a will, to enter into con-
tracts, transact business and be a witness. In the case of
Leggate v. Clark, 111 Massachusetts, 308, the admission of
similar testimony was treated as error. In addition to this,
however, these certificates were both dated December 14,
1885, more than two months before the will was made, and
are by no means inconsistent with the other testimony that
he was released from the asylum as cured February 1, 1886,
and that three weeks after that, when he executed the will,
he appeared to be of sound and disposing mind and memory.

In addition to the proof of his commitment to the asylum,
and of his undoubted insanity prior and for some time subse-
quent thereto, there was slight evidence of insane acts during
the month of February, though there was no opinion expressed
by any one that he was incapable of making a valid deed or
contract. The whole testimony regarding his insanity was
duly submitted to the jury, who were instructed that if they
found his insanity to be permanent in its nature and char-
acter, the presumptions were that it would continue, and the

burden was upon the defendant to satisfy the jury by a preponderance of testimony that he was at the time of executing the will of sound mind. There was no · error in this instruction.

There were also a large number of exceptions taken to the admission or exclusion of testimony and to the charge of the court, but to consider them in detail would subserve no useful purpose. We have examined them carefully, and have come to the conclusion that there was no ruling of the court of which the plaintiffs were entitled to complain. The evidence of insanity was very slight, and there was no legal testimony to show that the will was executed under the pressure of an undue influence.

The judgment of the Court of Appeals is, therefore,

*Affirmed.*