HOME OWNERS' LOAN CORPORATION, A CORPORATION OF THE UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT, v. ELIZABETH J. GRUNDY AND HENRY J. GRUNDY, HER HUSBAND, DEFENDANTS-RESPONDENTS.

Submitted October 4, 1938—Decided March 15, 1939.

Before Brogan, Chief Justice, and Justices Bodine and Heher.

For the appellant, *Emil M. Wulster*.

For the respondents, *Jerome J. Dunn*.

The opinion of the court was delivered by

HETFER, J. Plaintiff-mortgagee sued upon its bond for the deficiency arising on the foreclosure of the mortgage. The foreclosure sale was had on March 3d, 1937; and the single question in issue was the "fair market value" of the security at that time. The plaintiff corporation was the purchaser of the mortgaged lands on a bid of $100.

The jury empaneled to try the issue returned a verdict of "no cause for action;" and plaintiff appeals from the consequent judgment. The verdict was necessarily predicated upon the finding that, at the date of sale, the "fair market value" of the mortgaged lands was at least the amount of the apparent deficiency, $10,823.

On July 9th, 1934, defendants made and delivered the bond and mortgage to plaintiff as security for the payment of a loan of $9,424.80. At the trial, plaintiff adduced from an expert in realty values evidence tending to show that, at the time of the foreclosure sale, the fair market value of the security was $7,000. Defendants introduced evidence of like character that the value was $8,500. Their witness had made realty appraisements for the plaintiff corporation; and he was also permitted to testify that the then "fair market value computed according to the formula" employed by plaintiff corporation in making such appraisements in the year 1934 was $10,709. This formula, so the witness testified, "was made up of three items: first, market value; second, capitalization of rental; and, third, replacement value. Those three items were added together and divided by three, and in this case the first item is $8,500, fair market value; capitalization of rental, $12,000. That was arrived at by an estimate of rental values over a period of ten years." He estimated the building "replacement value" at $10,972.50. It was calculated on a cubic foot basis of thirty-five cents, less depreciation of twenty per cent. The witness also expressed the view that the "fair market value" of the property in 1934 was $10,000.

In this situation, defendants called upon plaintiff to produce "an appraisal of the property in question made for" it

by one Quinn, "sometime prior to July 9th, 1934;" and, upon its production, the paper was offered in evidence by defendants as "an admission against interest." Over the objection of plaintiff, it was admitted in evidence on the hypothesis that, "inasmuch as the mortgage was placed on the strength of an appraisal, * * * whatever is in the appraisal was ratified by the mortgagee * * * and, therefore, it would be binding." Therein Quinn certified, under date of March 9th, 1934, that the "present market price obtainable for property" was $12,000. The writing was labeled "Appraiser's Report;" and it contained the following injunction: "Appraisers are to regard this report as confidential. Applicant is not to be informed of any conclusions contained herein." Its admission in evidence is now assigned for error.

We deem the point to be well made.

Apart from the question of its relevancy on the inquiry as to the "fair market value" of the property on March 3d, 1937, the certification thus made by Quinn of his opinion of the "market price obtainable" on March 9th, 1934, was plainly hearsay, and therefore inadmissible. It is not classable as an admission against interest; nor does it fall into the category of a ratification of an agent's act binding upon the principal. Quinn's qualifications to form an expert judgment on the value of the mortgaged lands are not disclosed in his report; and it cannot be said with any show of reason that, by the mere procuring of his opinion as to the "market price obtainable" for the property, plaintiff vouched for his qualifications as an appraiser. For aught that appears, the statement of value thus embodied in his report did not induce the making of the mortgage loan; and there is no reason in principle why this "confidential" report, given under such circumstances, should be treated as an admission by plaintiff of the market price obtainable for the property at the time it was made.

This report, especially as regards the writer's view of the "market price obtainable" for the premises, does not fall within the common law classification of a record, return or report of a public nature, made under competent authority,

in a matter of public interest, and therefore invested with such guaranty of trustworthiness as to warrant its introduction into evidence as *prima facie* proof of the matters embodied therein, notwithstanding the interdiction of the hearsay evidence rule. *Keely* v. *Moore,* 196 *U. S.* 38; 25 *S. Ct.* 169; 49 *L. Ed.* 376; *United States* v. *Blackburn,* 53 *Fed. Rep.* (2d) 19; *United States* v. *Cole,* 45 *Id.* 339; *Runk* v. *Ten Eyck,* 24 *N. J. L.* 756; *Sandel* v. *State,* 126 *S. C.* 1; 119 *S. E. Rep.* 776; *Commonwealth* v. *Slavski,* 245 *Mass.* 405; 140 *N. E. Rep.* 465; *Wigmore on Evidence* (2d ed.) §§ 1639 *et seq.,* 1664, 1665, 1670-1672; *Greenl. Evid.,* § 483; *Jones Commentaries on Evidence* (2d ed.) §§ 1700 *et seq.*

And we are not advised of any statutory recognition of such report as an official document having probative force. This is certainly true of the statute authorizing the creation of the plaintiff corporation and defining its powers and duties. It was empowered, for a specified period since expired, "to acquire in exchange for bonds issued by it, home mortgages and other obligations and liens secured by real estate," and "in connection" therewith, "to make advances in cash to pay the taxes and assessments on the real estate, to provide for necessary maintenance and make necessary repairs," and so on, provided that "the face value of the bonds so exchanged plus accrued interest thereon and the cash so advanced" should "not exceed in any case $14,000, or eighty per centum of the value of the real estate as determined by an appraisal made by the corporation, whichever" should be "the smaller;" and also to make cash loans on the security of a mortgage on unencumbered property, provided that "no such loan" should "exceed fifty per centum of the value of the property securing the same as determined upon an appraisal made by the corporation." 12 *U. S. C. A.,* § 1463.

Thus the appraisal was, by express statutory direction, required to be made by the plaintiff corporation itself. The individual appraiser's "report" was not conclusive of value, nor was it designed to render the opinion of value therein expressed evidential in an inquiry such as this; its office was to provide data that might or might not be accepted by the

plaintiff corporation as worthy of consideration in the making of the appraisement in discharge of its statutory function.

In the circumstances, the admission of the report in evidence cannot be classed as harmless error. If it be suggested that the *quantum* of the mortgage loan, aided by the presumption of due observance of the statutory limitation, raises the inference that the appraisement made by the plaintiff corporation was not so much below Quinn's estimate of the price obtainable in the market as to constitute a material difference, the evidence thus adduced nevertheless worked injury, for, as has been shown, the standard of appraisement followed by the plaintiff corporation was not that applied by Quinn, *i. e.,* the "market price obtainable" for the lands. Even though it was, it is reasonably inferable that the jury were influenced by the opinion thus attributed to Quinn. Plaintiff's expert testified that there was "not very much difference between market value in July, 1934, and March, 1937;" and the jury were instructed that, in view of this piece of evidence, it was permissible to consider Quinn's estimate of the market value of the property. In these words, the trial judge gave the range of values open to the jury: "You can take anything from $7,000 up to the $12,000." And, although defendants' expert fixed the fair market value of the lands in March, 1937, at $8,500, and the deficiency on foreclosure exceeded this by some $2,300, the jury made no award to plaintiff.

Certain of the instructions are also challenged by the grounds of appeal. While the exception to the charge was general, and therefore inadequate, we deem it advisable, since there is to be a retrial of the issue, to pass upon the questions thus raised, to the end that there be no repetition of the error. The trial judge, giving "vent to" his "feelings," as he himself put it, castigated the administrative policy of the plaintiff corporation. After suggesting that it appraised the lands "in 1934, through rose colored glasses for the purpose of giving, and in 1937 appraised it through smoke colored glasses for the purpose of taking," he said: "It is difficult to reconcile the different methods. It is difficult to understand why they

practically forced money on a person in 1934, and loaned far more than they now say the property was worth, and they now come in and say, 'well, we gave you too much then; and we are going to take it away from you now. We helped you out then; we are going to help you down now.' " By these and other instructions in the same vein, the trial judge indicated to the jury his disapproval of the action of the plaintiff corporation in seeking enforcement of its contract.

The wisdom of plaintiff's administrative methods was not a relevant inquiry, and it was error for the trial judge to inject his views respecting it. The plaintiff corporation, like all other creditors, is entitled to enforcement of its contracts—in a case such as this, to the return of the moneys loaned in accordance with the borrower's undertaking. It was wholly immaterial that there was an essential difference between the standard of appraisement followed by plaintiff in the making of the loan and that laid down in the statute (*Pamph. L.* 1933, *p.* 172; *R. S.* 1937, 2:65-3), conceded to be applicable for the ascertainment of the deficiency arising on foreclosure. Regardless of the worth of the security, defendants assumed a contractual obligation to satisfy any deficiency that might arise on the foreclosure of the mortgage; and, in the ascertainment of the deficiency, they are not entitled to credit for more than the fair market value of the property at the time of the foreclosure sale.

It was plainly not the design of the Federal Home Owners' Loan Act, *supra,* to make such advances on the strength of the security alone, freed of the usual obligation of the borrower to answer for the deficiency on foreclosure; and, that being so, there was a public duty on the plaintiff corporation, irrespective of the soundness of the appraisement upon which the *quantum* of the loan depended, to enforce the personal liability. Entirely apart from the duty to secure a return of the public moneys so advanced, it goes without saying that non-enforcement in one case would not only be discriminatory but an inducement to non-performance by other borrowers.

The judgment is accordingly reversed, and a *venire de novo* awarded; costs to abide the event.