In the Matter of the Probate of the Will of ROBERT S. DOUGLAS, Deceased.

Surrogate's Court, Broome County, November 15, 1948.

*Harry S. Travis* for Joseph Nosal, proponent.

*John R. Normile* and *Charles W. Turner* for Raymond H. Douglas, respondent.

*G. Mead Willsey* for First Congregational Church of Binghamton, respondent.

*Frederick V. Marsi,* special guardian for Joseph R. Nosal and others, infants, respondents.

PAGE, S. The document offered for probate herein was written by Robert S. Douglas, now deceased, on the 10th day of April, 1948. This entirely holographic alleged will was written on two sheets of plain stationery, covering the front and back of the first sheet and the front of the second, in informal and, in some respects, ambiguous language. But we are not here concerned with anything as to that, but only as to the sufficient observance of the formalities of its execution.

After composing the document, the deceased placed it upon a counter where payments of premiums are received in the insurance office with which he was connected. At that time there was in the office (it being close to noon on a Saturday) no one else except two of the young women who were employed there. Simultaneously with presenting the written instrument in question at the counter, Mr. Douglas made it known to these two girls that he regarded it as his will. He signed the document at its end. It appears there is no question raised but that

there was a sufficient declaration of the instrument so subscribed to be his last will and testament, and, pursuant to section 144 of the Surrogate's Court Act, I am satisfied that he sufficiently declared the instrument to be his last will and testament. In connection with doing so, he requested Miss Elsie M. Coons, who happened to be a notary public, to be a witness to his will, or to "notarize" it. He also asked her to have the only other person then present in the office, Miss Ruth M. Allen, act as a witness.

The instrument contains no attestation clause. At the left margin, opposite the signature of Robert S. Douglas, he had written the word, "Witness". Immediately underneath this word is the signature, "Ruth M. Allen". About a half inch below this signature are the inscribed words in the handwriting of Miss Coons, "Sworn to before me this 10th day of April 1948 Elsie M. Coons Notary Public". Below this there appear the words applied by means of a rubber stamp, "Elsie M. Coons Notary Public, State of New York Residing in Broome County Broome County Clerk's No. None My commission expires March 30, 1950".

There is no question involved as to the alleged testator's sufficient mentality or as to the instrument's being a result of his own free and unrestrained act. The only issues presented are as to the sufficiency of compliance with certain provisions of section 21 of the Decedent Estate Law. The requirements of this section presently in question are two of those contained in its subdivision 4, reading as follows: "§ 21. *Manner of execution of will.* Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: * * * 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

Of the four requirements prescribed by the above-quoted portion of section 21, the issues here presented are as to: (1) "each of whom shall sign his name *as a witness*" and (2) "*at the request* of the testator." (Italics supplied.) It is contended on behalf of respondent, Raymond H. Douglas, brother and sole distributee of deceased, that the decedent did not request Elsie M. Coons to sign as a witness and that she did not do so as such but, rather, signed in her capacity as a notary public.

Upon the return of the citation herein a fairly extensive preliminary examination was had of each of the two young ladies whose names were caused by the decedent to be subscribed to the instrument. In this examination some confusion

was developed as to exactly what request was made of Miss Coons by the deceased in connection with the instrument, whether he asked her to witness or to "notarize" it, or both. A typical sample of her rather extensive and in some respects uncertain testimony along this line appears at pages 15–16 of the transcript of the preliminary examination as follows: After testifying: "He (meaning the decedent) came to the counter and he asked me to witness his signature", upon being asked to quote what was said, she further stated in her testimony, "'Will you witness this will and will you swear to it?', and, oh, I don't know  *  *  *. I don't know whether I asked him if he wanted me to swear to it or he just asked me to swear to it." After more attempts to remember what Mr. Douglas said, Miss Coons stated, at page 17, "I think he said, 'Will you witness this will?' before he signed it, then he signed, then I signed it and I swore to it, I took a sworn statement to it. Then he asked me to go over and ask Ruth."

Miss Ruth M. Allen was the second witness produced. Although her desk was close by, unquestionably within easy hearing distance, Miss Allen testified that she did not pay much attention to what decedent told or asked Miss Coons, but immediately followed this by testifying: "Well, he said something like, 'Elsie, will you witness my will?' I wouldn't say that was his exact words." On cross-examination Miss Allen stated, "He asked Elsie if she would sign it, or if she would,— I don't know if he said 'notarize' or 'witness' ".

It appears to be clear beyond all question that both of these witnesses are entirely disinterested and that both sought to be as nearly accurate as possible in rendering their respective testimonies. Both, of course, were entirely unfamiliar with the requirements of section 21 of the Decedent Estate Law in relation to legal formalities connected with the execution of wills. As to them, no doubt, the occasion was also of a merely casual nature. Apparently, there was no special effort made by deceased to impress their memories with his, unquestionably, serious purpose to execute the testamentary instrument he had just finished writing with full compliance with all legal prerequisites.

The above-mentioned preliminary examination occurred on June 24, 1948. The trial of the proceeding was held September 21, 1948. On the latter occasion, the only witnesses produced were the same two young women. They were extensively re-examined and a joint effort made by counsel for proponent, the objectant and the special guardian, and the

court to develop their respective " best recollections " of the actual words and acts of each of the three actors upon the occasion in question when the instrument was signed by each of them. As a result of this hearing, it was developed that the witnesses were then quite well agreed that the sequence of events was substantially as follows: On Saturday, April 10, 1948, shortly before the office closing time at noon on that day, the deceased presented the document in question to the witness, Miss Coons, at the customers' counter in the insurance office. He signed the instrument on the counter in the presence and under the observation of both witnesses. He referred to the instrument as " my will ", and asked Miss Coons to act as a witness. She assented to do so and signed her name as it appears on the purported last will and testament here in question. Decedent then asked her to have it also witnessed by Ruth M. Allen. The witness Coons carried the instrument a few feet to the desk of Miss Allen and communicated the deceased's request to her. This was followed by the affixation of the signature of Miss Allen immediately under the word " Witness ". According to the testimony taken at the trial, it was not until after all this was done that anything was said about " notarizing " the instrument. Miss Allen had nothing to do with this part of it. Asked as to who first said anything about " notarizing " the instrument, whether it was the deceased's idea or her own, Miss Coons testified: " I can't remember whether or not it was mine or his, but I think it was his idea that it would make it more legal because I had to go to my desk to get my seal." There was no seal, but, at another point, she testified that she " considered the notarial stamp a seal ".

The foregoing summary of verbal and other acts of the parties in question, as established by their testimony at the trial, is not to be taken as incontestably established without reference to: (1) their previous and somewhat inconsistent testimony at the preliminary hearing and (2) the physical appearance of the instrument itself.

As to the former, allowance should be made for the fact that these witnesses were, very understandably, confused, particularly because of their being laymen, unfamiliar with the required formalities or differences in the legal signification of various words. This summarization appears to represent the best recollection of the witnesses as to essentially what transpired, including all that occurred in connection with the so-called " notarization " of the instrument.

As to the latter consideration, viz., the physical appearance of the instrument, it is contended by respondent that this contradicts and renders incredible some essential portions of the testimony of the witnesses in regard to the facts in connection with the instrument's execution. It is argued that it is not natural or probable that the witness Coons would have affixed her signature in the relative position in which it appears on the instrument (near the lower left-hand corner of the sheet, slightly more than an inch below the testator's signature and only partially under the word '' Witness '') if her intention at the time had been to act simply as a witness. By the same token it is submitted that, as to the other witness, it affirmatively appears that she did intend to act solely and simply as such, because her signature appears on the instrument immediately below the word '' Witness '' which had been written thereon by the decedent. This contention is not without some logical bearing, but the question remains whether the signature situation is sufficient to countervail the testimony of the witnesses as to what actually occurred, with proper regard for the location with proponent of the burden of proof, together with a strict construction of the statute such as the well-settled law requires.

However, the direct testimony of both witnesses to the effect that Elsie M. Coons signed first is somewhat corroborated by the physical circumstance that her signature following the jurat written above it and somewhat to the left is not in the normal position of a signature by a notary public which is usually approximately flush with the left margin of the jurat. In the present exhibit there is a distance of about a half inch between the left margin of the jurat extended downward and the beginning of the signature '' Elsie M. Coons '', which is some indication that the signature had been first subscribed and the jurat had been inscribed above it. Also, the slant of her handwriting as it appears in the jurat is different than her signature.

Another circumstance to which attention is called by counsel for the contestant is the testator's having written on the instrument about opposite and to the left of his own signature thereto the word '' Witness '' in the singular instead of it in the plural. It is contended that this indicates that he did not realize the necessity of having more than one witness, else he would have written the word in the plural. However, I do not think that this is a circumstance of strong probative effect, either by itself or with anything else in conjunction with the present situation. It is well known that legal forms contemplating signatures of

two or more witnesses commonly designate the location reserved for such witnesses' signatures by the singular form of the word, " Witness ". Publishers of legal forms and of form books are well known to follow this practice. Moreover, the word " witness " may as well be used as a verb as a noun.

It is far more probable than otherwise that deceased knew that two witnesses were required. A circumstantial indication whereby it affirmatively appears that he knew this is the fact that he took up the matter of witnessing the instrument with two persons instead of one, and requested both to bear witness of his act, whether as notary public or otherwise. In fact, it appears from the testimony to be extremely doubtful whether any idea of employing a notary public as such was present in the deceased's mind at all until it was suggested to him by Miss Coons who happened to be one. By crediting the joint testimony of both the witnesses, this never occurred anyway until the instrument had been completely executed; that is, it was an afterthought, designed in the mind of either Miss Coons or the decedent, and assumed to have the effect of attaining a " more legal " execution of the instrument.

The testimony of both witnesses eventually evolved to the effect that the jurat was written above the signature of Elsie M. Coons and the stamp applied after her signature had been written on the instrument and she had presented it to the other witness and also obtained her signature. According to this, there had been at least a moment of time before the afterthought about a notary public had been injected in the proceedings when the instrument had been duly executed in accordance with the provisions of section 21 and its, thereupon, having become extant as the legally executed last will and testament of the decedent. It is not pretended that any of the words added in relation to a notary public (jurat and stamp) has any effect by way of a revocation of the instrument as a will. Of course, this would not be true because methods of revocation are only as prescribed by statute and the mere addition of extra words does not constitute any form of a statutorily prescribed method of revocation. It is entirely possible for a will to have subsequent words written on it and yet be admitted to probate exclusive of the additional words and strictly in accordance with its full content as it existed at the moment its execution was completed. (See *Matter of Lyons,* 75 N. Y. S. 2d 237, 248; *Matter of Enright,* 139 Misc. 192, and cases there cited.)

A careful review of all the evidence leaves only one outstanding circumstance tending to indicate any degree of improbability that the witness, Elsie M. Coons, might have testified mistakenly to the effect that she had written her name only as a witness and then obtained the signature of the other witness before anything was thought of or done about the injection of the appearance of having " notarized " the instrument. This circumstance is the physical fact, apparent by an examination of the instrument in question, that she, although the first witness according to testimony, nevertheless affixed her signature in second place under the word " Witness ", as it had been written on the instrument by the decedent. But, in this connection, it should be remembered that some people are not as precise and predictable as the majority of others as to what action they will take under any given circumstances. There is nothing definitely improbable in the testimony of both witnesses to the effect that none of the notarial dressing was applied until after the execution of the instrument in the manner required in cases of testamentations had been fully accomplished. The witness Coons might not — in a hurry to quit for the week end — have even noted that the decedent had written on the word " Witness ", or even if she did, that she was not taking proper heed of this designation by signing her name under the word but about one and a half inches below it. In any event the balance of probabilities (despite some previous inconsistencies in witnesses' testimony) is in support of their eventual testimony to the effect that nothing was said or done about the notarial appurtenances to the instrument until an afterthought in this connection had occurred to Miss Coons, or possibly the deceased himself.

Over and beyond every consideration of this item of somewhat doubtful evidence, there remains the question whether a notary public cannot also be a witness. Does acting as a notary public necessarily exclude the possibility of also acting as a witness? Does the fact of the jurat before and the stamp following her signature absolutely preclude her status as a witness and its having been so intended by both the decedent and herself at the time?

In the present case, this question is to be resolved in view of a series of undisputed facts. These are: (1) she witnessed his signature affixed to the instrument at its end by the decedent; (2) she heard him declare the instrument as his will; (3) she heard the decedent request her to witness or " notarize " his will (the final testimony of both witnesses is that he requested

her to " witness ", whether or not he also said anything about her doing so as a notary public, or " notarizing " the instrument); (4) she did act as an attesting and subscribing witness (even though she might have assumed to act as something over and beyond simply and only that); (5) she did hear the decedent also request that Miss Allen be a witness (doing so through her agency), and (6) she did herself secure the assent of the other witness to act as such and saw her affix her signature accordingly.

In view of all this, can it be doubted that the witness, Elsie M. Coons, acted as an attesting and subscribing witness and that her status as such is unaffected by the notarial dressing, even though this might possibly have been added before the execution of the instrument had been completed, i.e., before obtaining the signature of Miss Allen? As a matter of common experience, does not every notary public generally automatically become an attesting or subscribing witness to any instrument verified or acknowledged before him? In this particular case, we have the added circumstance that the jurat is false anyway. Nothing was " sworn to ". No oath was administered. However, the " before me " words in the jurat are undisputed. Although a notary public may be acting as such in an official capacity, does that necessarily mean that he does not at the same time also act in an incidental capacity as a witness? It would seem that the greater should include the lesser. The whole is equal to the sum of all its parts.

The provisions of section 21 of the Decedent Estate Law are among our most ancient statutory provisions. This section has gone unamended ever since the revised statutes of 1830. Its purpose is to prevent fraud and to tend toward a guarantee of the genuineness of testamentary dispositions. The provisions of this section are, and always have been, enforced with absolute strictness. The intent of the putative testator or witnesses, or both, is futile and immaterial in the face of their failure to substantially comply with each and every provision contained in this section in accordance with the construction by courts of the legislative intent manifested by its provisions.

However, although these provisions are strictly enforced, their observance has never been reduced to any ironclad ceremonial or ritualistic formula. If the fair preponderance of evidence is sufficient to show that execution of the testamentary instrument did not fail to substantially observe and comply with any of the requirements, the instrument becomes authenticated and

its inchoate eligibility for admission to probate becomes absolute, unaffected by mere surplusage.

Despite the quite general apparent assumption of laymen that a notary public is endowed with some magical quality frequently resulting in incongruous notarizations of papers, there are few reported cases where a notarial complication such as this has arisen in the case of a will. A case submitted as supporting the position of the objectant herein was *Matter of McDonough* (201 App. Div. 203). In that case, the Appellate Division (Third Department) affirmed a decree denying probate to a propounded will which had been "notarized". Among the bases of determination in this case, the appellate court held that only one witness had signed as such. In that case the notary public purported to take a jurat as to both the alleged testatrix and a witness. It appears in the report of that case that the notary public had sworn the maker of the alleged codicil and its single witness. It was stated by the court (pp. 204–205), "The testimony of the alleged witnesses to the execution, both as to publication by the testatrix and as to whether Weaver, the notary public, was requested to witness the will, is unsatisfactory. The burden of proving genuineness and due execution rests upon the proponent", citing *Matter of Jacobs* (76 Misc. 394) and *Matter of King* (89 Misc. 638). The court, moreover, found no support for any determination that the notary public had signed "as a witness", adding (p. 205), "We are unwilling to say that the learned surrogate was in error in reaching the conclusion that the intent was to act as a notary and not as an attesting witness." Even more importantly, the main consideration in the *McDonough* case (*supra*) was that the appearance of the instrument and circumstances under which it was shown to have been executed created a highly suspicious situation as to its genuineness, a very different situation than in the case of a completely holographic testament written by a person of good mentality at the time of its execution. The present case is clearly and unquestionably distinguishable.

The only other New York case appears to be *Matter of McAvish* (161 Misc. 887) wherein Surrogate DELEHANTY in New York County stated and held: "The court holds that he was asked to act as a subscribing witness because he was a notary public and because deceased desired to have what probably seemed to her the greater value which attached to a person holding official place. The court holds expressly that the act of signing by Isidor Rothenberg was the act of a subscribing witness."

Cases in other States have recognized the same considerations as above reviewed. Citations of such cases are: *Keely* v. *Moore* (196 U. S. 38); *Payne* v. *Payne* (54 Ark. 415); *Murray* v. *Murphy* (39 Miss. 214); *Bolton* v. *Bolton* (107 Miss. 84). For example, in *Bolton* v. *Bolton* (*supra*) the Supreme Court of Mississippi, among other things, stated and held (p. 91): " there can be no question that his [a notary public's] taking the acknowledgment and attaching his signature thereto, was for the purpose of evidencing the fact that he had witnessed the execution of the will by the testator." And, in *Keely* v. *Moore* (*supra*), p. 43): " What use was intended to be made of it [the certificate] is immaterial, if it were useless for any purpose as an official certificate. The facts certified are appropriate to the attestation of the instrument, and, if true, we see no reason for holding it to be invalid as an attestation, because it was signed under the impression that it was necessary for some possible purpose as a certificate."

The composite demonstration shows a fair preponderance of the evidence to the effect that the decedent sufficiently complied with the statute as to its only two questioned respects herein, viz., (1) requesting each of two attesting witnesses to act as such, and (2) obtaining the signature of each of the two persons who signed her name as a witness. This conclusion would be sufficiently supported even if the instrument here in question were not holographic.

Despite the consideration that the fundamental purpose of the statute, insurance against imposition or fraud, is not nearly so applicable to a person's purported will, self-written in full, our law of wills makes no exception in cases of holographics. Each and every one of the seven separate prerequisites of section 21 of the Decedent Estate Law must be shown to have been adequately observed, as in the case of any will drafted by another at the instance and request of a testator. (*Matter of Turell,* 166 N. Y. 330, 337–338.)

But, even in cases where the judicial consideration of all the evidence may result in leaving the mind in doubt as to whether or not each and every item of the statutory requirements was adequately observed, the tribunal charged with the factual determination may give weight and consideration to the fact that the tentative testator's volition or testamentary intention has been shown beyond a reasonable doubt in relation to a holographic instrument. In such a case, the general proof in a close issue requires an interpretation of the evidence more favorable to the proponent. It might justify the admission to probate of a

propounded testamentary instrument in an otherwise doubtful case. (*Matter of Hunt,* 110 N. Y. 278, 281.)

In the present case, it does not appear that the situation with respect to proponent's proof is so desperate as to require any special reliance upon the last above-mentioned consideration, which would be more particularly applicable to cases wherein the proof was of lesser cogency in its bearing upon the questioned acts of statutory compliance. But the circumstance of the holographic character of the instrument in the present case results in reassurance that the preponderating evidence of a legally sufficient compliance with all required formalities may be effectuated in the probate without any misgiving that doing so might be regarded as anything less than a proper regard for the strict application of the statute which is mandated by our law of wills.

Decree may be entered upon notice admitting the propounded instrument to probate.