In the Matter of the Construction of the Will of Robert S. Douglas, Deceased.

Surrogate's Court, Broome County, May 26, 1949.

*Harry S. Travis* for Joseph A. Nosal, as executor of Robert S. Douglas, deceased, petitioner.

*Charles W. Turner* and *John R. Normile* for Raymond H. Douglas, respondent.

*G. Mead Willsey* for First Congregational Church of Binghamton, respondent.

*Frederick V. Marsi,* special guardian for Joseph R. Nosal and others, infants, respondents.

PAGE, S. In this proceeding for a construction of the will of the testator above named, we are compelled to deal with unrelieved crude and ambiguous language. This holographic will was also questionable in relation to the validity of its execution. It was only after a close and costly contest that the will was admitted to probate. (*Matter of Douglas,* 193 Misc. 623.) In some instances homemade pies are superior. Wills never.

The petition for construction sets forth a long list of ambiguities and asks for their resolution. It also asks for a construction of '' the will as a whole ''.

The jargon of words comprising the will is such as a not especially clear-minded client might employ if he were to call on an attorney to make his will, and was asked for an uninterrupted statement in his own words. Their only appropriate function would be to serve as a beginning point from which, by means of a competent draftsman's questions and suggestions, a coherent draft of a will might be composed.

Several of the will's paragraphs purport to deal with various confused dispositions of personal property. Consideration of all these paragraphs need not be any more extensive than to dispose of them wholesale by an early determination that an attempted construction of their language would be unnecessary and, therefore, academic. This is so because it happens to be a fact, in the predistributive phase of the estate's administration, that all the personal property will be absorbed for the purpose of paying debts. Courts abjure the consideration of academic questions. A typical case on courts' aversion to academic questions is *Matter of Mount* (185 N. Y. 162). It is particularly in order that there should be no departure from this well-established procedure in the present instance.

Therefore, the only parts of the will as to which construction is necessitated are those having to do with the devolution of the real property of which testator died seized. Paragraphs '' 1st '' and '' 2nd '' are so intertwined that they must be read together.

Selecting the parts of the will having any bearing in relation to real property, we find them reading as follows:

" My Last Will                  April 10, 1948

\* \* \* \* \* \* \*

" 1st — My house at 47 Evelyn St., Johnson City, N. Y. must be sold, but can not be sold to John or Ethel Nosal now living there — the price as of to-day should be $7,000.00. The money from this sale is to be kept in Trust for young Joeseph R. Nosal the interest may be used for giving Joe Joe vocal & music lessons — the principal to be used for his college education, I hope he will pick a college where there is a chapter of Sigma Phi if he joins Sigma Phi he is to have my Sigma Phi pin, otherwise it is to be returned to the Alpha Chapter of Sigma Phi at Schenectady, N. Y.

" 2nd My stock in Douglas Aircraft & all its stock dividends are to be kept for Joseph R. Nosal, he may have the cash dividends till he is 21 years old then he may do what he wishes with the stock, I hope he will keep it & never sell the stock or any stock dividends.

" If anything should happen to little Joe — half of above is to go in Trust to the First Congregation Church of Binghamton, the Trust to be known as May Hall Douglas & James J. Douglas — the income to be used for kindness to the sick, shutin & poor of the parish. The balance of above 1 & 2 or the other half is to be kept in Trust for Sigma Phi Society at Union College, Schenectady to be known as the Robert S. Douglas Fund the interest to be used for parties & entertaing at the Alpha of Sigma Phi at Union.

" 3rd My cottage Sandy Pond & all its contents are to go to Joseph A. Nosal, which I hope he will keep in good shape & when he passes away to be given to young Joseph R. Nosal.  \*  \*  \*

" 11th & last wish is that my house at 154 Chapin St., Binghamton, N. Y. & all its contents & all the rest of my personal effects are to go to Joseph A. Nosal with my wish that he will live there & enjoy his home & keep it in good condition for when he passes on that it will go to his son Joseph R. Nosal & his daughter Mary Jane Nosal, share & share alike so they may live there."

A preliminary question presented is as to whether the First Congregational Church of Binghamton and Sigma Phi Society at Union College, Schenectady, became vested with any future interest by virtue of the above-quoted contingent provision introduced by, " If anything should happen to little Joe ". When an estate is created by one provision of an instrument by terms which are sufficiently coherent to be intelligible, it cannot be cut down or limited by ambiguous or less definite subsequent words. (See *Matter of Fort*, 126 Misc. 28, and collection of cases there

cited, in support of this guiding principle.) The two possible intendments that the testator might have had in mind in his reference to these organizations are: (1) that they should take the remainder after an intervening life interest of "little Joe", or (2) that they were named in contemplation of the possibility that the primary beneficiary might predecease the testator. The principle of construction appears to be well settled that, where there is a gift to one person absolutely, and, in case of his death, to another, the provision for such a contingency is taken to refer to the death of the first taker during the lifetime of the testator. (*Kelly* v. *Kelly*, 61 N. Y. 47; *Quackenbos* v. *Kingsland*, 102 N. Y. 128; *Vanderzee* v. *Slingerland*, 103 N. Y. 47; *Fowler* v. *Ingersoll*, 127 N. Y. 472, 476; *Matter of Denton*, 137 N. Y. 428, 434.) I am of the opinion that the effect of the reference to these organizations contained in the last sentence of paragraph " 2nd " was to nominate them as contingent beneficiaries, the criterion being the possibility that the infant, Joseph R. Nosal, might predecease the testator. Since this did not transpire, neither of these organizations acquired any interest. The situation is the same as if they had never been named at all.

The next question to be determined is as to the effect of the mandatory direction of sale of No. 47 Evelyn St. It is contended by the executor that this results in its conversion to personal property. Syllogistically stated, this argument is: All personal property, in its relation to real property, is primarily subject to debts — the direction to sell operates to convert this real property into money, i.e., personal property — thereupon it becomes a part of the personal property and is, therefore, applicable to debts in advance of the other real property.

The fallacy in this line of reasoning is in relation to its minor premise. This assumes a conclusion not invariably valid to the effect that a power of sale works a conversion so that the real property must be regarded and treated as personal property.

The above-stated line of reasoning also disregards testamentary intent. A mere reading of paragraph " 1st " shows that a total application of proceeds of 47 Evelyn Street to debts would be not only inconsistent with but completely repugnant to the testator's sole purpose to provide a fund for the educational benefit of his favorite beneficiary. Assuming the power of sale will be exercised, it is quite immaterial whether we regard the proceeds as real property or personal property. Either way, the subject matter of this paragraph is real property of which the testator died seized dedicated by him to an express purpose and no other. As was stated by the Court of Appeals in *Matter*

*of Tienken* (131 N. Y. 391, 408) : " Equity will not resort to the fiction [equitable conversion] where the same right devolves upon the same persons whether the property be treated as money or land, and where no rights of third persons depend upon the conversion ". However, the subject matter of paragraph " 1st " is, of course, subject to being, the same as any other real property of its category, diminished, or possibly totally absorbed, by debts, despite the testator's intention to devote it to another purpose.

Incidentally, we are called upon to settle the question as to whether the intended benefit is a trust or direct gift to the beneficiary. This is so because of the testator's having stated in paragraph " 1st ", " The money from this sale is to be kept in Trust for young Joseph R. Nosal ". In order to create a trust, no prescribed formal language is required. The law will delineate a trust where, in view of a sufficiently manifested purpose or intent, that is the appropriate instrumentality, even though its creator calls it something else, or doesn't call it anything. Conversely, the presence of the term " trust " does not necessarily imply that the provision in question must be tortured into the form of a trust regardless of pertinent considerations bearing upon its true intendment and purpose. A construction in the light of the most probable testamentary intent must be made involving two concepts of the term " trust ". This term has a popular as well as a technical meaning. The testator, as a layman, cannot reasonably be assumed to have used the term scientifically or with precision. This becomes more obvious when we read paragraph " 1st " of the will in conjunction with the above-quoted matter appearing in the part the testator designated as paragraph " 2nd " and the unnumbered paragraph following paragraph " 2nd ". In this the intent appears quite clearly that the benefits intended to be conferred by all the provisions contained in the will as far as the point which the testator designated as paragraph " 3rd " were to be " kept for " the infant, thus indicating that the testator contemplated a guardianship and not a technical trust. *Matter of Grauer* (146 Misc. 469) is illustrative of the application of the rule of reason that an ill-advised, inadvertent or indiscriminating usage of the term " trust " or " trustee " will not result in a trust, in the absence of a practicable basis of operation as such.

In the present instance, attributes of a trust such as the appointment of the trustee, words of gift or devolution to him as such, the term of its duration and disposition of the remainder, etc., are lacking. Neither is there any urge, under the circum-

stances presented here, to go out of our way in an effort to imply these missing factors of a trust.

Moreover, in the present instance, the construction of a trust would be a burdensome and most undesirable solution of the difficulty presented. If the real property, subject to the exercise of the power of sale in the executor, did not vest in the infant, Joseph R. Nosal, immediately upon the death of the testator, the lack of any direction as to the time when the " college education " of " little Joe " should begin and end might very well result in tying up the property or its sale proceeds for the full term of the remaining lifetime of an infant now about five years of age. Unless he used up the fund in college, there would be no way of determining until his death whether or not he would ever go to college, and this would be true whether he lived to be twenty-one or ninety-one. *Matter of Hawley* (104 N. Y. 250, 261–262) ruled, under similar circumstances, that property bequeathed to an infant would be administered by means of a guardian of his property unaffected by the testamentary designation of " trustee ". I hold that the same solution is applicable in the present case.

In this case the testator's purpose was to provide for a gift of money to a single beneficiary and he imposed no limitation, nor envisaged any other disposition, contingent or otherwise, in relation to either income or principal. The educational purpose stated by the testator is not to be regarded as a condition or qualification appertaining to the gift, but merely as a recital of a motive for making it. Pursuant to well-established authority, a gift of income of a fund without any limitation as to time, and with no other disposition of the principal or corpus, in legal effect, is a gift of the fund itself and the gift is none the less absolute because of an expression of the testator's motive in making it. (See *Matter of Dibble,* 76 Misc. 413, 415; *Matter of Ingersoll,* 95 App. Div. 211, 212, in each of which numerous other authorities in this connection are cited.)

In view of all the above recited considerations, I conclude that the real property designated as " My house at 47 Evelyn St., Johnson City, N. Y.", subject to the power of sale and also subject to the necessary proportionate application of proceeds thereof to payment of debts, is vested in the infant, Joseph R. Nosal.

As appears from the agreed statement of facts herein, the deficit of debts remaining after applying all personal property will be approximately the sum of $3,900. We have already reached the conclusion that, at least as to its liability in relation

to estate debts, the real property disposed of by paragraph " 1st " is to be regarded and treated as a specific devise. The real property comprising the subject matter of paragraphs " 3rd " and " 11th " are also specific devises. It thus appears that all the parcels of real property in the estate are in the category of specific devises.

In the absence of any specific direction in the will to the contrary, the long-established rule for marshaling assets for payment of debts requires that all personal property is to be first exhausted before resort is made to real property. Of the personal assets, the order of application is: (1) unbequeathed personal assets (applicable in intestate or partially intestate estates); (2) personal assets under residuary provision; (3) general bequests; then, (4) in cases where a deficit still remains, by applying the proceeds of specific bequests. (Surrogate's Ct. Act, § 214; *Duck* v. *McGrath,* 160 App. Div. 482, affd. 212 N. Y. 600; *Matter of Ely,* 153 Misc. 334.) There is no question as to the procedure in relation to personal assets in the present case since, after applying all the personal estate, there still remains a deficiency.

Therefore, resort must be had to real property. In cases where this is true, the order of application is: first, undevised real property, if any; then residuary or otherwise generally devised real property, and, lastly, specifically devised real property. (Surrogate's Ct. Act, §§ 233, 234, 238; *Duck* v. *McGrath, supra; Matter of Ely, supra.*) As to the real property, any question under this system of marshaling is likewise not involved in the present case, since all the real property in the estate is of the same category, viz., specific devises. All three parcels of real property, in proportion to their respective fair market valuations, as stipulated, must participate in the liquidation of debts, together with funeral and administration expenses, to the extent necessary to balance the deficit remaining after applying all the personal assets.

The necessary remaining construction is in relation to " Sandy Pond " cottage (par. " 3rd ") and 154 Chapin Street, Binghamton (par. " 11th "). The situations of these two devises are sufficiently similar in the language pertaining to them respectively that they present a common issue, viz., whether the testamentary intent was (1) to devise in fee simple to Joseph A. Nosal (Nosal, Sr.), with only a precatory suggestion that, in the case of " Sandy Pond ", the testator would like to have him devise this to " young Joseph R. Nosal " and, as to 154 Chapin Street, that the testator's preference would be that the remainder in this

property be left to Joseph R. Nosal and his sister, Mary Jane Nosal, share and share alike, or (2) that the testamentary intent is to be construed as a devise of a legal life estate in each of the properties to Joseph A. Nosal with the remainder, in the case of the former, to Joseph R. Nosal alone and, in the case of the latter, to Joseph R. Nosal and his sister, Mary Jane.

The question whether words in a will are to be construed as merely precatory on the one hand or directive on the other is not always solely determinable by the words themselves. Mild and nonmandatory-sounding phraseology, in view of testamentary intent gatherable from the will as a whole, and, ofttimes, also from pertinent circumstances surrounding the testator at the time of the will's execution, may determine the construction as directory and dispositive rather than merely precatory and advisory. (See 1 Page on Wills [3d ed.], § 91, and many cases there cited.)

Taking all such material criteria into consideration in the present case leads me to feel fairly well assured that the testator's purpose and intended provision in regard to these properties was that the primary beneficiary, Joseph A. Nosal, should take a legal life estate in each, with the remainder over, in paragraph " 3rd ", to Joseph R. Nosal alone and, in paragraph " 11th ", to him and his sister, Mary Jane, and I so hold.

Settle and enter decree in accordance with determinations of questions of construction hereby indicated.