[No. 32165-0-I.   Division One.   April 18, 1994.]

*In the Matter of the Estate of* LELAND J. PRICE.

RONALD L. PRICE, ET AL, *Appellants*, v. MONICA PRICE, *Respondent*.

746

*Paul W. Houser, Jr.,* and *Dobson, Houser & Dobson,* for appellants.

*Mary A. Vance,* for respondent.

KENNEDY, J. — Leland Price's adult children of his first marriage, Ronald Price, Richard Price, Delores Cameron and Darrell Price (Appellants), appeal two orders granting summary judgment to Leland's second wife, Monica Price. The first order held that Leland's will was validly executed. The second order determined that the will should be interpreted as devising to Monica a fee simple on condition subsequent in the Price home in Renton. Appellants contend that the will was invalidly witnessed, and that material issues of fact remain concerning whether the will grants Monica a fee simple on condition subsequent or a life estate defeasible upon her remarriage. We conclude that the will was validly witnessed, and that the trial court properly concluded that Monica received a fee simple on condition subsequent. Accordingly, we affirm.

FACTS

Leland Price died September 22, 1991. He was survived by his second wife Monica Price and the Appellants, his children from his first marriage. Monica has three adult children from her first marriage. Leland and Monica had no children between them. They were married on March 2, 1974, and remained married and living together continuously for 18 years prior to Leland's death.

Four years before the death of his first wife, Leland constructed a house in Renton. The entire family helped build the home, which was paid for with cash. Ronald Price refers to the house as a "family project". The house, valued at $275,000, constitutes the bulk of Leland's $383,000 estate.

Leland executed the will at issue on September 30, 1990. Monica executed a mutual will at the same time, with provisions substantially identical to those of Leland's will. Leland wrote the wills himself, without the aid of an attorney. The record reflects that Leann Wilson typed the wills, working from Leland's handwritten notes.

The first paragraph of the will directs that all debts and funeral expenses be paid by the executrix or executor. The third paragraph states:

> All the rest, residue and remainder of my property, of which I may die seized or possessed, or to which I may in any manner be entitled at the time of my death, I give, bequeath and devise to my wife MONICA PRICE.

Clerk's Papers, at 3. The fourth paragraph divides the estate between the Appellants in the event that Monica does not survive Leland by a period greater than 4 months.[1]

The remaining paragraphs have created the confusion in this case. The fifth paragraph gives the executrix

> full power to sell and convey any or all of the real estate or personal property belonging to [the] estate without an order of any court for that purpose and without notice or confirmation, and at such price and upon said terms and conditions as to her or him may seem just[.]

Clerk's Papers, at 3. It also provides that

> all rents, issues and profits derived therefrom as well as the proceeds arising from the sale thereof, and all increment of the same, shall be held and managed by my said executrix or executor as trustee[.]

Clerk's Papers, at 4.

The sixth paragraph memorializes the joint execution of mutual wills by Leland and Monica, making the wills irrevocable without the express agreement of the other spouse. The seventh paragraph reads:

> If either myself (Leland Price) or my wife (Monica Price) remarry he or she can't live in the home place. They both

---

[1]Monica's mutual will leaves all of her estate to Leland, should he survive her by more than 4 months. If he does not, Monica's entire estate is divided among Leland's children from his prior marriage, leaving Monica's own children with nothing of their mother's estate.

agree that in such event they will be cut out of the will. All cash in the bank will go to the surviving husband or wife.[2]

Clerk's Papers, at 4. The last numbered paragraph, the ninth, names Monica as the preferred executrix and Ronald Price as the alternate.

All of the above-described provisions appear on the first two pages of the will. The final page, page three, bears the title "Attesting Clause and Affidavit of Sworn Witness". Leland's will was executed at the home of Leann L. and Nicolas P. Wilson. Both Nicolas and Leann signed page three of the will, Nicolas as a witness and Leann as notary.

Ken Molotte also signed this third page. Molotte was not, however, present at the Wilsons' home when Leland and the Wilsons signed the document. Molotte had not signed the attestation page by the time that Leann Wilson notarized the will. Leland approached Molotte after that occasion and asked him to witness the will. Leland did not present the entire will to Molotte. Rather, he showed Molotte only the last page, that is, the "Attestation Clause and Affidavit of Attesting Witness" page. Molotte signed that page in the presence of only Leland.

On November 22, 1991, two of the Appellants petitioned for appointment as coadministrators of the estate. They believed that the will was improperly witnessed because Molotte signed the attestation after the Wilsons did, and because Leann did not sign as an attesting witness, leaving only one witness attesting the will.

On January 31, 1992, both Leann and Nicolas Wilson signed declarations stating that: (1) they both signed Leland's will at his request; (2) they knew Leland and he appeared to possess testamentary capacity, to be of sound mind, and to be free of undue influence or duress; and (3) when they "witnessed" the execution of the will they themselves were of legal age, sound mind and were free of any criminal convictions that would disqualify them from tes-

---

[2]Monica's mutual will contains the same clause. Thus, if Monica had died first and Leland remarried, Monica's will provided that Leland could not live in the "home place" either, and would be "cut out of the will".

tifying as witnesses. Leann made a second declaration on February 18, 1992, stating that she was never asked to sign the will as an attesting witness, and that she did not sign the will thinking that she was a witness. On February 25, 1992, Judge Lasnik entered a partial summary judgment stating that Leland's will was validly executed.

On June 30, 1992, Appellants petitioned for an order construing the will. They argued that Monica should be prevented from selling the Price home, as Leland had wanted the house to pass to his children. They claimed that Leland's will was ambiguous, and argued that extrinsic evidence established his intent as regards the house.

To support their contention, Appellants offered two declarations, a third one by Leann Wilson, and one by Molotte. In this third declaration, Leann stated that she overheard Leland talking to Monica on the day he executed the will:

> Leland told Monica that the terms of his Will provided that she received all the money. That she could live in his house until she died unless she got remarried and then the house would go to his children. . . .
>
> . . . .
>
> I clearly recall Leland telling Monica that she could not sell the house and upon her death or remarriage that the house would go to his son, Ronald, whom he said he wanted to have the home. After he told this to Monica Price she said that she understood that that was what he wanted.

Clerk's Papers, at 62-63.

Molotte's declaration states that Leland approached Molotte before executing the 1990 will, saying that he wanted to change his prior will. According to Molotte, Leland knew that Monica planned on moving back to North Dakota if Leland died first. Leland said that he wanted to change his will so that Monica could live in the Price family home as long as she wanted, and use the cash in the bank; but if she decided to sell the home, the proceeds were to be split between her and the Appellants.

Judge Tuai denied the Appellants' petition and entered a summary judgment declaring that Monica receive a fee simple on condition subsequent in the Price home. This timely appeal followed.

DISCUSSION

This is an appeal from a summary judgment. The ordinary standard of review for summary judgments applies. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

I

## Will Execution

Appellants argue that Leland's will was not properly executed because Leann Wilson signed as a notary, not as an attesting witness.

No Washington case directly addresses whether a notary's signature can be treated as the signature of an attesting witness. However, the requirements for valid will execution have been reduced to a minimum in Washington. *In re Estate of Chambers*, 187 Wash. 417, 425, 60 P.2d 41 (1936). RCW 11.12.020 requires only that:

> Every will shall be in writing signed by the testator . . . and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request[.]

RCW 11.20.020(2) states:

> any or all of the attesting witnesses to a will may, at the request of the testator . . . make an affidavit before any person authorized to administer oaths, stating such facts as they would be required to testify to in court to prove such will, which affidavit may be written on the will or may be attached to the will or to a photographic copy of the will.

A witness as described by RCW 11.12.020 is one who has personal knowledge of the fact that the will was signed by the testator. *See In re Estate of Cronquist*, 45 Wn.2d 344, 345, 274 P.2d 585 (1954). The attestation by that witness certifies that the testator's signature was valid. *Estate of Cronquist*, at 345.

Washington does not require formal words of attestation in a will "if competent witnesses present before the court testify that they subscribed their names to a document in

the presence of the testator, and to facts which amount *in law* to an attestation". (Italics ours.) *Estate of Chambers*, 187 Wash. at 423. In *Chambers*, three witnesses signed the will after the testator's signature. There was no attestation clause and no specific or formal oral request from the testator that these three witnesses attest the will. Nevertheless, the court deemed the will validly executed. *Estate of Chambers*, 187 Wash. at 422-23. It was clear from the witnesses' testimony that the testator wanted the subscribing witnesses to attest the will, even though the witnesses may have been unaware of this. *Estate of Chambers*, 187 Wash. at 427-28. Although instructive, the *Chambers* opinion did not address the validity of a notary's signature in attesting to a will.[3]

■ Where an individual asked to attest a will also appends a notary's certificate, thinking perhaps that the notary certificate adds additional credibility to the attestation, the character of the attestation itself is unaffected. 79 Am. Jur. 2d *Wills* § 268, at 466 (1975); 94 C.J.S. *Wills* § 191(b), at 1028 (1956); *Keely v. Moore*, 196 U.S. 38, 43, 49 L. Ed. 376, 25 S. Ct. 169 (1904) ("What use was intended to be made of it [the notary's certificate] is immaterial, if it were useless for any purpose as an official certificate"). Courts in other jurisdictions extend this logic to hold that a notary asked to sign a will only as a notary may still be deemed as validly attesting a will because the same legal requirements needed to properly notarize the will are sufficient to legally attest the will as well. *See* 79 Am. Jur. 2d *Wills* § 265, at 463 (1975). Stated differently, a notary's signature can be deemed the signature of an attesting witness if all of the

---

[3]Appellants place great emphasis on this line from the *Chambers* opinion:

Under the statute, the attestation of a will is the act of the witnesses, not that of the testator, although, of course, the act of the witnesses must be based upon the acts of the testator in executing the will and requesting that the witnesses sign *as such*.

(Italics ours.) *In re Estate of Chambers*, 187 Wash. at 421. This statement is dicta. No authority, statutory or otherwise, was cited in *Chambers* for the proposition that witnesses must be asked to sign a will *only* as witnesses in order to validly attest the will.

legal requirements of a valid attestation were nonetheless complied with by the notary's signature.[4] Compare *Chambers*, at 423.

The record on appeal supports our conclusion that Leann Wilson's signature complied with the legal requirements of an attesting witness. She typed the will from Leland's notes, and in doing so had ample opportunity to interact with Leland and judge his competency. Compare *In re Estate of Mitchell*, 41 Wn.2d 326, 345, 249 P.2d 385 (1952) (while not a legal duty, it is highly desirable that an attesting witness observe and satisfy himself as to the testamentary capacity of the testator). In her own declaration of January 31, 1992, Leann stated that Leland signed the will in her presence. *Cf. Estate of Cronquist*, 45 Wn.2d at 345. Leland requested that she sign the will, and she did so immediately after her husband. *Cf.* RCW 11.12.020. Finally, she was of sound mind and qualified at law to be a witness. On these facts, Leann's signature as a notary could properly be treated instead as the signature of an attesting witness. We hold that Leland's will was validly executed before two witnesses, Nicolas and Leann Wilson. Accordingly, we affirm Judge Lasnik's partial summary judgment.

## II

### Will Construction

Appellants contend that, given the circumstances surrounding its creation, Leland's will is ambiguous, necessitating recourse to extrinsic evidence to ascertain Leland's

---

[4]Of course, the notary's certificate and signature cannot serve both as an attestation and a notarial certificate at once. *Keely*, 196 U.S. at 43. For example, Monica argues in the alternative that Ken Molotte's signature was valid, giving Leland's will two valid signatures. Had Nicolas Wilson not been able to sign a new declaration stating that the will was validly executed, as he did on January 31, 1992, Leann's signature would have been necessary *as a notary* to certify Nicolas Wilson's signature on the attestation affidavit attached to the will. Under those circumstances, Leann's signature could not be considered that of an attesting witness, and the court below may have been forced to examine the validity of Molotte's signature. The court below did not have to reach this issue, however, and given our decision, neither do we.

intent.[5] They argue that the extrinsic evidence presented creates a material issue of fact as to whether Leland meant to leave the house to his children after a life estate to Monica that was defeasible upon Monica's remarriage.

When construing a will, courts must give effect to the testator's intent as of the time of the will's execution. *In re Estate of Bergau*, 103 Wn.2d 431, 435-36, 693 P.2d 703 (1985). This intent should, if possible, be garnered from the language of the will itself. *Bergau*, at 435. The will should be considered in its entirety and effect given to every part. *Bergau*, at 435. The *Bergau* court adds:

> Because a testator employs language in the will with regard to facts within his knowledge, the court must consider all the surrounding circumstances, the objects sought to be obtained, the testator's relationship to the parties named in the will, his disposition as evidenced by provisions to be made for them and the general trend of his benevolences as disclosed by the testament.

*Bergau*, 103 Wn.2d at 436. The testator is presumed to be familiar with the "surrounding circumstances" that could affect the will's construction. *Bergau*, at 436.

If, after reading the entire will, the court finds ambiguity as to the testator's intent, extrinsic facts and circumstances can be admitted to explain the language of the will. *Bergau*, at 436. The ambiguity must be one of three types before extrinsic evidence is allowed: (1) latent — an ambiguity not apparent on the face of the document but apparent when applying the will to the facts as they exist; (2) patent — apparent on the face of the will; (3) equivoca-

---

[5]In the alternative, Appellants argue that the Prices' mutual wills constitute a contract, and that in Washington all contracts can be construed by recourse to extrinsic evidence. Mutual promises to devise by will are sufficient consideration to sustain a contract. *Raab v. Wallerich*, 46 Wn.2d 375, 282 P.2d 271 (1955). Extrinsic evidence is admissible as to the entire circumstances under which a contract was made in order to establish the parties' intent. *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990).

However, *Berg v. Hudesman, supra,* does not apply to the interpretation of an ambiguous will. Instead, *In re Estate of Bergau*, 103 Wn.2d 431, 693 P.2d 703 (1985) controls. We also note that Monica has, to date, fulfilled her obligations under the contract by executing a will leaving her entire estate to Leland's children.

tion — an accurate description that applies equally to two or more people with the same name or things of the same description. *Bergau*, at 436-37.

Leland's will is ambiguous.[6] However, this determination does not render the extrinsic evidence here offered admissible, as the extrinsic evidence offered by Appellants sheds no clarifying light on the language of the will or Leland's intentions in drafting this will.

Leann's third declaration states that just prior to signing their wills, Leland and Monica had a conversation in which Leland told Monica that he did not want her to sell his home, and that he wanted it to pass to his son Ronald. Monica stated that she understood. Molotte's declaration states that Leland was concerned about Monica moving back to North Dakota. Leland told Molotte that should Monica ever decide to sell the Price home, he wanted her to split the proceeds with his children.[7]

On their faces, the declarations by Wilson and Molotte are inconsistent with one another. Further, Leland's will does not mention a different disposition for the property should Monica decide to move back to North Dakota, and nowhere does it devise the Price home solely to Ronald Price. Finally, Leann's statement that Leland did not want Monica to sell his home is in direct conflict with the will's allowance that, as the executrix, Monica *could* sell the home. Extrinsic evidence can be used only as an interpretive aid, not as a tool for rewriting the testator's will. *See In re Estate of Smith*, 40 Wn. App. 790, 795, 700 P.2d 1181

---

[6]For example, a latent ambiguity is found in paragraph seven of Leland's will, which becomes apparent when reading Monica's joint will. Monica owns no community property interest in the "home place", as Leland constructed and paid for the house before his marriage to Monica. Despite this, if Leland survived Monica, he could not have lived in his own home should he remarry. Paragraph seven also contains a patent ambiguity, in that it says that if the surviving spouse were to remarry he or she would be "cut out" of the will, but would still receive all of the cash in the bank accounts, $93,000.

[7]Appellants also offer the statement of Ronald Price, one of the Appellants. Those portions of his statement which purport to document Leland's testamentary wishes cannot be considered. Under RCW 5.60.030, interested parties cannot testify concerning transactions with the testator.

(1985). The extrinsic evidence here cannot be used as an interpretive tool, as it is not helpful in clarifying what Leland intended by the language in his will. It only adds to the confusion.

Without helpful extrinsic evidence, the trial court was required to utilize the aids to constructing wills specified in RCW 11.12.170 and established in *Bergau*.

*Bergau* directs courts to look to the relationships involved and the "surrounding circumstances" of which the testator should have been aware when construing a will. *Bergau*, 103 Wn.2d at 436. Leland's primary concern in drafting and executing his will clearly was to provide for Monica, his wife of almost 18 years, after his death. Paragraphs three and four bequeath all "the rest, residue and remainder" of Leland's property to Monica, provided that she survives him by a period greater than 4 months. The only other condition placed on that devise relevant to this appeal appears in paragraph seven:

> If either myself (Leland Price) or my wife (Monica Price) remarry he or she can't live in the home place. They both agree that in such event they will be cut out of the will. All cash in the bank will go to the surviving husband or wife.

Presumably Leland wanted Monica to be able to consume the entire estate until she no longer needed it, *i.e.*, until she either died or married another man who would care for her.

For example, Monica could conceivably incur major medical expenses before she passes away. She may need to sell the house in order to pay any medical bills or for nursing home care. The Appellants' position would prevent her from selling the home and paying her necessary bills. This would be contrary to Leland's intent to provide for his wife after his death.

█ Furthermore, every devise of land in Washington shall be construed to convey the full estate owned by the testator unless it clearly appears by the will that the testator meant to convey a lesser estate. RCW 11.12.170. Thus, Leland's clear intent to bequeath "[a]ll the rest, residue and remainder" of his estate can only be conditioned by an

equally clear manifestation to devise less than the full estate. *See In re Estate of Niehenke*, 117 Wn.2d 631, 641, 818 P.2d 1324 (1991); *see, e.g., Holmes v. Holmes*, 65 Wn.2d 230, 234, 396 P.2d 633 (1964) (devise "for her care and maintenance . . . as she finds necessary" constitutes a fee simple especially where no children are involved); *In re Estate of Wendl*, 37 Wn. App. 894, 896-901, 684 P.2d 1320 (1984) (devise "I'd like it if in their wills they pass on what they cant [*sic*] use to Alice & her descendants" did not bequeath only a life estate given precatory nature of language).

■ We must address whether Leland's proviso concerning Monica being cut out of the will if she remarries constituted a clear intent to provide only a life estate. Although never decided in Washington, other jurisdictions interpret provisions in a will which terminate a devise upon remarriage as granting a fee simple conditioned upon never remarrying, not a defeasible life estate. *See, e.g., Saunders v. Saunders*, 260 Or. 480, 490 P.2d 1260 (1971); *Lewis v. Searles*, 452 S.W.2d 153, 154 (Mo. 1970); *Dickson v. Alexandria Hosp., Inc.*, 177 F.2d 876, 880-81 (4th Cir. 1949). As the owner of a fee simple on condition subsequent, Monica would enjoy all of the benefits of fee simple ownership.[8] 4 William J. Bowe & Douglas H. Parker, *Page on Wills* § 37.8, at 601 (1961).

■ Appellants correctly argue that Monica's and Leland's wills should be read together. But they further contend that Monica's promise to leave the remainder of her property to Leland's children shows that she only has a life estate. Under this interpretation, Leland would not have

---

[8]Appellants contended at oral argument for this appeal that this interpretation would create a cloud on the title of the Price home, such that any third party purchaser could be ejected by the Appellants should Monica violate the condition subsequent by remarrying after selling the home. This issue was not briefed to this court and we do not address it; however, we suggest that the parties might wish to refer to *In re Platman's Estate*, 72 N.Y.S.2d 28, 29 (Surr. Ct. 1947) (widow receiving fee simple on condition subsequent may spend the estate at will, without restriction); and *Pumroy v. Jenkins*, 151 Kan. 466, 99 P.2d 752 (1940) (widow receiving fee simple on condition subsequent cannot be sued for waste by children who may take if widow violates the condition).

devised the remainder interest in his home to Monica. If Monica had only a life estate, she could not devise the home to Leland's children upon her death. This interpretation would violate the presumption in favor of testacy. *In re Estate of Riemcke*, 80 Wn.2d 722, 729, 497 P.2d 1319 (1972).

Based on our review of the relevant statutory and case law, and based on the rules of will construction established by *Bergau*, we conclude that no material issues of fact remain concerning the interpretation of Leland's will which could have been resolved by the extrinsic evidence offered here. Accordingly, we affirm Judge Tuai's grant of summary judgment to Monica Price.

Affirmed.

AGID and BECKER, JJ., concur.