IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In re the Estate of Omar Bygland, | ) | No. 80443-0-I |
| | ) | consolidated with |
| D. EDSON CLARK, as co-trustee of | ) | No. 80444-8-I, |
| Omar Bygland Credit Trust; and | ) | No. 80740-4-I, and |
| SUSAN E. (NINA) BYGLAND, as | ) | No. 80940-7-I |
| beneficiary of Omar Bygland Credit | ) | |
| Trust, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KYLIE BYGLAND CRAIG, as | ) | |
| co-trustee of Omar Bygland Credit | ) | |
| Trust, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — Following a bench trial, the trial court ordered primary credit trust beneficiary Susan (Nina) Bygland to pay $75,000 to residual beneficiaries Kylie Bygland Craig and Brian Bygland. But, consistent with the trust's terms, the trustees legitimately authorized every disbursement to Nina.[1] And the trustees did not breach their fiduciary duties when doing so. Because the facts here do not provide a legal or equitable basis to hold Nina liable, the court erred.

The trial court ordered the trust to pay costs and attorney fees incurred by Nina and trustee D. Edson Clark for defending a frivolous counterclaim brought by

---

[1] Because they have the same last name, we refer to Nina, Omar, Kylie, and Brian Bygland by their first names.

Kylie about a matter unrelated to the trust. But RCW 11.96A.150(1) does not allow such an award against the trust. Rather, Kylie should be required to pay the costs and attorney fees of Nina and Clark from defending against her frivolous counterclaim.

As to costs and attorney fees on appeal, Clark and Nina prevail on every consequential issue. We grant their requests for attorney fees under RCW 11.96A.150(1), payable by Kylie. We deny Kylie's request for costs and attorney fees.

Therefore, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## FACTS[2]

Nina and Omar Bygland married in 1977. Each had been married before and had adult children from those marriages. In 2000, Omar executed a will that provided for the creation of a credit trust with Nina as the primary beneficiary, entitling her to all income from the trust and allowing the trustees to invade the principle as "necessary for [her] health, maintenance, and support in her accustomed manner of living."[3] Clark, Nina's son, and Kylie, Omar's daughter, were made cotrustees. Kylie and her brother Brian are residuary beneficiaries of the credit trust.

---

[2] All facts are taken from the trial court's findings of fact, Clerk's Papers (CP) at 507-22, except where otherwise noted. We cite to only the unchallenged findings of fact, which are verities on appeal. In re Washington Builders Ben. Tr., 173 Wn. App. 34, 65, 293 P.3d 1206 (2013) (citing Robel v. Roundup Corp., 148 Wn.2d 35, 42, 59 P.3d 611 (2002)).

[3] Ex. 12, at 3.

Omar died in June of 2002. Nina was the personal representative for his estate. Consistent with Omar's will, the probate funded the testamentary credit trust with half of Omar's community property. Kylie and Clark retained Morgan Stanley to administer the trust and agreed to have Clark's accounting firm provide tax services to the trust. They also agreed the trust would pay for half of Nina's rent at the apartment where she and Omar had lived for more than a decade. Nina would pay the other half of her rent from her own assets.

The trust began paying Nina's rent in late 2002 or early 2003. In 2004, Nina began receiving an annual disbursement of $25,000 from another trust, the Carrico trust, which her brother established. Nina and Clark were trustees of the Carrico trust. Neither Clark nor Nina told Kylie about the Carrico trust.

"From late 2004 through early 2016, Kylie did nothing with regard to the Credit Trust other than to approve [accounting] fees and tax distributions when requested to do so by Morgan Stanley."[4] However, "[n]o monies were distributed from the Credit Trust without Kylie's consent and approval."[5] Kylie received a monthly statement for the trust account from Morgan Stanley, and it included the account balance, distributions, and any account activity. Kylie "did little . . . to be informed about Nina's expenses," deferring instead to Clark to "make decisions and perform the necessary administrative tasks related to the Trust."[6]

---

[4] Clerk's Papers (CP) at 515 (Finding of Fact (FF) 57).
[5] CP at 515 (FF 56).
[6] CP at 516 (FF 63).

On April 14, 2016, Kylie e-mailed Clark and requested the trust's tax returns from 2006 through 2015. After tax season was over, Clark provided her the tax returns and detailed billing statements of the services his firm provided the trust. In July of 2017, Kylie told Clark she was rescinding her longstanding authorization for the trust to pay half of Nina's rent, and she requested 10 years of Nina's financial information from him. Kylie explained she was looking out for herself and Brian as residuary beneficiaries, asserting that they had "supported Nina to the tune of approximately $100,000 each" from the trust.[7]

In October of 2017, Clark and Nina filed a TEDRA[8] petition. They sought to remove Kylie as a trustee, alleging she breached her fiduciary duties by rescinding her authorization for Nina's rent and by refusing to approve payments to Clark's accounting firm for its services. Kylie filed counterclaims alleging Clark breached a variety of his duties as a trustee. She also alleged that Nina and Clark had damaged her when Omar's will was probated by misappropriating, improperly distributing, or concealing assets. The parties engaged in discovery, including multiple motions disputing the scope of discovery. Between 2002 and the 2019 trial, the trust principal had dropped from approximately $310,000 to approximately $77,000.

After a five-day bench trial, the court entered findings of fact and conclusions of law. The court concluded neither Clark nor Kylie breached any of their duties, the trust owed Clark's accounting firm for services provided, Nina

---

[7] CP at 516 (FF 68, 69).

[8] Trust and Estate Dispute Resolution Act, ch. 11.96A RCW.

owed Kylie and Brian a reimbursement of $75,000, one of Kylie's counterclaims was frivolous, and the trust would pay Clark and Nina's costs and attorney fees for defending against the frivolous counterclaim. The court ordered Nina to pay $75,000 to Kylie and Brian, the trust to pay $75,889.20 to Clark and Nina for costs and attorney fees, the trust to pay $7,294.50 to Clark's accounting firm, and for the credit trust to be terminated because the awards would drop its value below $25,000.

Nina and Clark appeal, and Kylie cross appeals.

## ANALYSIS

### I. Breach of the Credit Trust

The court held Nina personally liable for $75,000 as repayment for "funds the Credit Trust paid to Nina for expenses which were not necessary for her health and maintenance and which could have been paid for by the Carrico Trust."[9] Nina and Clark argue the court erred because a beneficiary cannot be held liable for a breach of trust and that no Washington case supports doing so. Kylie argues the court's equitable powers gave it the authority to hold Nina accountable.

The trial court did not conclude Nina breached any duty or was part of a scheme to unjustly enrich herself. And no finding indicates Nina breached a duty through action or inaction. Every disbursement she received from the trust had been approved by the trustees. Those disbursements were for expenses necessary to maintain her accustomed manner of living. Except for a single

---

[9] Clerk's Papers (CP) at 525.

disbursement in 2004 to subsidize her purchase of a new car, every payment was to cover half of her rent in the same apartment where she and Omar had lived before his death. Because there is no mechanism in the trust to allow a claw-back of payments approved by the trustees and no finding suggests Nina acted improperly to enrich herself, the trial court erred by concluding Nina's conduct required that she pay $75,000 to Kylie and Brian.

Even if we assume without deciding that a trial court has the equitable authority to order an innocent beneficiary to reimburse a trust due to unjust enrichment, the court still erred. To the extent the court concluded Kylie's ignorance about the Carrico trust caused Nina to be unjustly enriched, this is premised upon the court's interpretation of the trust as imposing a duty on both trustees to consider all of Nina's assets before making distributions and a duty on Clark to inform Kylie about the Carrico trust income. The trust did not impose such duties.

We review a court's interpretation of a testamentary device de novo as a matter of law.[10] We interpret the device to uphold the testator's intent.[11] Although the testator's intent is a question of fact,[12] it "'must be derived from the terms of the

---

[10] In re Estate of Wright, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008) (citing Woodward v. Gramlow, 123 Wn. App. 522, 526, 95 P.3d 1244 (2004)).

[11] Matter of Estate of Bergau, 103 Wn.2d 431, 435, 693 P.2d 703 (1985) (citing In re Estate of Riemcke, 80 Wn.2d 722, 728, 497 P.2d 1319 (1972)).

[12] Eisenbach v. Schneider, 140 Wn. App. 641, 651, 166 P.3d 858 (2007) (citing In re Estate of Soesbe, 58 Wn.2d 634, 636, 364 P.2d 507 (1961)).

instrument—construing all the provisions together.'"[13] Thus, we consider the device as a whole, giving effect to every part.[14] The device's provisions should be understood from the testator's perspective because the "testator is presumed to be familiar with the 'surrounding circumstances' that could affect the will's construction."[15] Extrinsic evidence should be used to interpret or construe the device only if, read in its entirety, the testator's intent is ambiguous.[16] It "may not be considered 'for the purpose of proving intention as an independent fact, or of importing into the will an intention not expressed therein.'"[17]

The critical subsections of the trust are 3.1 and 11.4. Section 3 provides for the creation of the credit trust. Subsection 3.1 specifies how distributions should be made:

> The Trustee shall distribute all of the net income from the trust to or for the benefit of my wife in convenient installments and shall distribute to or use for my wife's benefit <u>such portion of the trust principal as the Trustee determines necessary for my wife's health, maintenance, and support in her accustomed manner of living.</u>  In making distributions, it is my desire that my wife continue to live in her accustomed standard within the limitations of the funds available,

---

[13] <u>Templeton v. Peoples Nat. Bank of Wash.</u>, 106 Wn.2d 304, 309, 722 P.2d 63 (1986) (quoting <u>Old Nat'l Bank & Union Trust Co. v. Hughes</u>, 16 Wn.2d 584, 587, 134 P.2d 63 (1943)).

[14] <u>Wright</u>, 147 Wn. App. at 681 (citing <u>In re Estate of Price</u>, 73 Wn. App. 745, 754, 871 P.2d 1079 (1994)).

[15] <u>Price</u>, 73 Wn. App. at 754 (quoting <u>Bergau</u>, 103 Wn.2d at 436).

[16] <u>Id.</u> (citing <u>Bergau</u>, 103 Wn.2d at 436).

[17] <u>In re Estate of Curry</u>, 98 Wn. App. 107, 113, 988 P.2d 505 (1999) (internal quotation marks omitted) (quoting <u>In re Estate of Patton</u>, 6 Wn. App. 464, 467-68, 494 P.2d 238 (1972)).

therefore, I desire that the Trustee resolve in my wife's favor any uncertainty concerning distributions from trust principal.[18]

The first sentence of subsection 3.1 can be broken into two mandates to the trustees. The parties do not dispute that the first requires distribution of all net income from the trust to Nina. The parties dispute the meaning of the second mandate about invading the trust's principal.

The dispute centers on the meaning of "such portion of the trust principal as the Trustee determines necessary." The trial court concluded that "'necessary' modifies the nature of the expense."[19] Kylie rejects that interpretation and instead interprets "necessary" as obliging the trustees to consider whether an expense "was necessary in light of Nina's other assets."[20] Both interpretations conflict with the structure and grammar of subsection 3.1.

"Necessary" is part of a prepositional phrase—"as the Trustee determines necessary"—that modifies the clause's direct object, the complex noun phrase "such portion of the trust principal." In other words, the trustees must disburse whatever portion of the trust principal is necessary for Nina's health, maintenance, and support in her accustomed manner of living. The size of the necessary portion is "as the Trustee determines,"[21] meaning it could be as small as zero dollars if the trustees were certain no amount was necessary. One of the limits on this discretion is the second sentence of subsection 3.1, where Omar states his

---

[18] Ex. 12, at 3 (emphasis added).

[19] CP at 511 (FF 21).

[20] Resp't's Br. at 28.

[21] Ex. 12, at 3.

"desire that the Trustee resolve in my wife's favor any uncertainty concerning distributions from trust principal."[22]

The trial court misreads the sentence's structure by severing "necessary" from its prepositional phrase, "as the trustee determines necessary." And Kylie's interpretation is unavailing because nothing suggests the word "necessary" should be read in conjunction with a phrase, "within the limitations of the funds available," in a separate sentence on a separate topic. Thus, as a matter of plain English, subsection 3.1 reflects Omar's unambiguous intention to give the trustees discretion to decide to what extent the trust principal should be invaded for Nina's health, maintenance, and accustomed standard of living. This interpretation aligns with the discretion given to the trustees in subsection 11.4.

Subsection 11.4 provides for the trustees' consideration of other resources when making distributions. Kylie contends subsection 11.4 required the trustees to "consider Nina's other resources <u>before</u> invading the Credit Trust's principal."[23]

In its entirety, subsection 11.4 provides:

The Trustee, in exercising the discretion granted in making payments hereunder, <u>may</u> take into consideration the reasonable use of all resources which <u>may</u> then be known by the Trustee to be available to or for the use of the respective beneficiary; provided, however, to the extent that a Trustee has an obligation to support a beneficiary, the Trustee shall take into account all such resources including the beneficiary's parents' or Guardian's ability to support such beneficiary. The Trustee, in the Trustee's discretion, <u>may</u> request and rely upon a signed statement from such beneficiary or the beneficiary's parent or Guardian, satisfactory to the Trustee, as to such resources and <u>may</u>, in the Trustee's discretion, suspend

---

[22] Ex. 12, at 3.

[23] Kylie Resp't's Br. at 29 (citing CP at 509, FF 5).

benefits hereunder for such beneficiary during any period in which a requested statement is not furnished.[24]

It has three parts: a general rule, an exception, and an enforcement mechanism.

The first independent clause states the general rule, providing the trustees discretion to consider a beneficiary's resources before making a payment.[25] The trustees "may" consider the beneficiary's resources that "may" be known by the trustee.[26] The clause contains no words of command to the trustees. Generally, Clark and Kylie had the option of inquiring into Nina's resources and the discretion to consider them.

The exception mandates that a trustee consider "all such resources" available to support the beneficiary, but it applies only "to the extent that a Trustee has an obligation to support a beneficiary."[27] Kylie argues Clark had an obligation to support Nina as a trustee and as her son. This interpretation is not convincing. If the exception applied to the trustees because of their position, then the general rule preceding it would be meaningless, and trust devices are interpreted to give effect to every provision.[28] And Kylie provides no other authority to explain why Clark had a legal obligation to support his mother. Omar knew when he created the trust that Nina was an adult in her late 70s with her own individual assets, that

---

[24] Ex. 12, at 10 (emphasis added).

[25] See Strenge v. Clarke, 89 Wn.2d 23, 28, 569 P.2d 60 (1977) (in statutes, "the word 'may' conveys the idea of choice or discretion") (citing State ex rel. Beck v. Carter, 2 Wn. App. 974, 977, 471 P.2d 127 (1970)).

[26] Ex. 12, at 10.

[27] Ex. 12, at 10.

[28] Wright, 147 Wn. App. at 681 (citing Price, 73 Wn. App. at 754).

neither Kylie nor Clark was her guardian, and that neither trustee had an obligation to support her. The unambiguous language of the trust reveals Omar did not intend to mandate that the trustees consider Nina's assets before making distributions to her.[29]

Read in its entirety, Omar clearly intended to provide the trustees considerable discretion to decide how much of the trust's principal should be used for Nina's benefit. The discretionary nature of these determinations also makes sense because section 3.1 mandates distribution of all net trust income to Nina. If the trustees determined the trust's net income was enough to provide for Nina's needs, then they could then determine no portion of the trust principal was necessary for her benefit. The trust's terms demonstrate Omar's intent to accord broad discretion to the trustees when making distributions from the trust principal. The trustees had no duty to consider Nina's assets and income before making a distribution, and the trust did not impose a duty on Clark to inform Kylie in her capacity as a cotrustee about Nina's assets and income. Because the court

---

[29] See Price, 73 Wn. App. at 754 (testator's intent is determined from language of the device itself as understood by the testator's knowledge when creating it) (citing Bergau, 103 Wn.2d at 435, 436). Nina and Clark challenge finding of fact 5, which states "Omar's intent would have been that [Clark] consider Nina's [distributions from the Carrico trust] in making distributions of his trust." CP at 509. Because the trial court relied upon extrinsic evidence to determine Omar's intent when the trust was unambiguous, the finding should not have been entered. See Curry, 98 Wn. App. at 113 ("[E]xtrinsic evidence may not be considered 'for the purpose of proving intention as an independent fact, or of importing into the will an intention not expressed therein.'") (internal quotation marks omitted) (quoting Patton, 6 Wn. App. at 467-68). We decline to review it for substantial evidence.

erroneously concluded Nina had been unjustly enriched, it erred by ordering her to pay $75,000.[30]

In her cross appeal, Kylie contends Clark should be responsible for any repayment because he breached his fiduciary duties of good faith, loyalty, and impartiality owed to her as a beneficiary. She appears to argue that Clark breached the duties of good faith and loyalty by not informing her about the Carrico trust and by not limiting distributions from the credit trust principal based upon the Carrico trust's existence. She appears to argue Clark breached his duty of impartiality by authorizing distributions from the credit trust's principal while serving as a trustee to the credit trust and as a trustee-beneficiary of the Carrico trust.

Whether a trustee breached their fiduciary duties is a mixed question of law and fact where the trial court's findings of fact are reviewed for substantial evidence and its conclusions of law are reviewed de novo.[31] Because it is

---

[30] Nina and Clark assign error to findings of fact 32 and 84. Findings of fact 32 and 84 are about the size and operation of the Carrico trust. We decline to review them because neither Nina nor Clark had a duty to disclose her income from it, so those aspects of the Carrico trust are, at best, collateral to the issues before us. See McLeod v. Keith, 69 Wn.2d 201, 203-04, 417 P.2d 861 (1966) (when sufficient evidence supports "the material and decisive findings" that support the judgment, "the presence of unsupported and immaterial findings is of no consequence") (citing Simms v. Ervin, 46 Wn.2d 417, 282 P.2d 291 (1955); Aura v. Markle, 105 Wash. 654, 178 P. 814 (1919)); State v. Coleman, 6 Wn. App. 2d 507, 516, 431 P.3d 514 (2018) (reliance on an immaterial finding of fact is not prejudicial even if the finding was erroneous or unsupported) (citing Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992)).

[31] See In re Estate of Jones, 152 Wn.2d 1, 8-9, 93 P.3d 147 (2004) (explaining the standard of review to analyze a trial court's removal of a trustee for breach) (citing cases); Washington Builders, 173 Wn. App. at 63 (explaining the standard of review to analyze a trial court's determination that a trustee breached).

undisputed that Clark had fiduciary duties of good faith, care, loyalty, and integrity, the question is whether the trial court's findings supported its conclusion that Clark did not breach those duties.

A trustee's duty of good faith includes a duty to inform.[32] Kylie argues the trust imposed a duty on Clark to inform her and Brian about the Carrico trust and Nina's income from it. As discussed, the terms of the trust did not impose an independent duty to disclose on Clark. The question is whether he breached a common law duty to inform.

Every trustee must inform beneficiaries "fully of all facts which would aid them in protecting their interests."[33] But this duty is not so broad. In Allard v. Pacific National Bank, our Supreme Court discussed the scope of the duty to inform.[34] It explained that beneficiaries "must know of what the trust property consists and how it is being managed."[35] Typically, "periodic statements are sufficient to satisfy a trustee's duty to beneficiaries of transactions affecting the trust property."[36] In Allard, the trustee breached because it sold a trust's sole asset without informing the beneficiaries.[37]

---

[32] Allard v. Pac. Nat'l Bank, 99 Wn.2d 394, 404, 663 P.2d 104 (1983) (citing Esmieu v. Schrag, 88 Wn.2d 490, 498, 563 P.2d 203 (1977)).

[33] Id. (citing Esmieu, 88 Wn.2d at 498).

[34] 99 Wn.2d 394, 404-05, 663 P.2d 104 (1983).

[35] Id. at 404 (citing G. Bogert, Trusts and Trustees § 961 (2d ed. 1962)).

[36] Id.

[37] Id. at 396.

Here, unlike Allard, the undisclosed information—Nina's income from other sources—do not relate to assets of the credit trust. The fortunes of the Carrico trust would, at most, indirectly affect the credit trust, similar to Nina's retirement and pension benefits. Because the Carrico trust and Nina's income from it were entirely separate from the credit trust's assets, Clark's duty to inform did not extend to them.

Kylie argues Clark breached his duties of loyalty and impartiality by deciding to invade the credit trust's principal while serving as a trustee-beneficiary of the Carrico trust and as a trustee of the credit trust. A trustee must administer the trust in the interest of the beneficiaries.[38] "The trustee must exclude from consideration not only his own advantage or profit, but also that of third parties in dealing with trust properties and in all other matters connected with the administration of the trust estate."[39] It is undisputed Clark owed this duty to Kylie, Brian, and Nina.

Kylie contends Clark, by invading the credit trust principal, acted adversely to herself and Brian as residuary beneficiaries in order to favor Nina as the primary beneficiary and himself as a residuary beneficiary of the Carrico trust. Nina argues the record is insufficient to reverse the trial court's conclusion that Clark did not breach his fiduciary duties by approving distributions to pay half of Nina's

---

[38] Washington Builders, 173 Wn. App. at 63 (quoting Tucker v. Brown, 20 Wn.2d 740, 768, 150 P.2d 604 (1944)).

[39] Tucker, 20 Wn.2d at 768.

14

rent.[40]  As the plaintiff below and now cross appellant on this issue, Kylie has the burden of demonstrating the trial court's findings of fact are unsupported by substantial evidence.[41]  And the absence of a finding on a material issue is assumed to be a negative finding entered against the party with the burden of proof at trial.[42]  Because Kylie declined to challenge any of the trial court's findings of fact, the question is whether the existing findings support the trial court's conclusion that Clark did not breach.

Finding of Fact 95 states "[n]o evidence was offered or admitted regarding the terms of the Howard Carrico Trust other than testimony that there were limits on the ability of the trustees to distribute money from that trust."[43]  Finding of Fact 96 states that Clark's unrebutted testimony was "that the Carrico Trust always distributed more money to Nina than the [credit] Trust."[44]  Findings of Fact 75 and 76 show that Nina's personal liquid assets were depleted by over half between 2002 and September of 2018.  And Finding of Fact 56 states "[n]o monies were

---

[40] No party addresses the trial court's contradictory conclusion of law that both Kylie and Clark did not breach their fiduciary duties by authorizing disbursements to pay half of Nina's rent and breached by "invading the principal the first time."  CP at 526.  But, as discussed, the trust did not impose such a duty to consider Nina's assets before invading the trust principal, and the court erred by concluding they breached their fiduciary duties by doing so.

[41] Pham v. Corbett, 187 Wn. App. 816, 825, 351 P.3d 214 (2015) (citing Green v. Normandy Park Riviera Section Comm. Club, Inc., 137 Wn. App. 665, 689, 151 P.3d 1038 (2007)).

[42] Mitchell v. Straith, 40 Wn. App. 405, 412, 698 P.2d 609 (1985) (citing Goldberg v. Sanglier, 96 Wn.2d 874, 880, 639 P.2d 1347 (1982); In re Eggers, 30 Wn. App. 867, 873, 638 P.2d 1267 (1982)).

[43] CP at 520.

[44] Id.

distributed from the Credit Trust without Kylie's consent and approval."[45]  These findings support the trial court's conclusion that Clark did not breach his duty of loyalty by favoring himself or Nina, even if the potential for a conflict existed.  The absence of findings consistent with a breach of the duty of loyalty is deemed a negative finding imputed against Kylie and supporting the conclusion that no such evidence existed.[46]  Because Kylie has the burden on appeal of demonstrating that the trial court's findings of fact do not support its legal conclusions and she has not done so, she fails to demonstrate that the trial court erred.

Kylie contends remand is required because the trial court relied upon In re Sackman's Estate[47] to enter erroneous conclusions of law.  The court relied upon Sackman's Estate to conclude Kylie could not sue Clark because, as cotrustees, they "were one entity under the law with regard to all decisions relating to the Credit Trust."[48]  Even if incorrect, remand is not required.  Because the effect of this conclusion appears to have been the court's decision to decline to enter a judgment against Clark, and judgment should not have entered against Clark regardless, no prejudice resulted from this alleged error.  Remand is not required.[49]

---

[45] CP at 515.

[46] Mitchell, 40 Wn. App. at 412 (citing Goldberg, 96 Wn.2d at 880; Eggers, 30 Wn. App. at 873).

[47] 34 Wn.2d 864, 210 P.2d 682 (1949).

[48] CP at 524 (Conclusion of Law (CL) 11).

[49] See In re Marriage of Morris, 176 Wn. App. 893, 903, 309 P.3d 767 (2013) ("'It is well established that errors in civil cases are rarely grounds for relief

## II. Attorney Fees From Trial

Clark and Nina argue that their costs and attorney fees incurred in defending against Kylie's frivolous counterclaim should not have been assessed against the trust. Kylie made several counterclaims, one of which alleged Clark and Nina mishandled the probate of Omar's estate.[50] The trial court awarded Clark and Nina costs and attorney fees for defending against that counterclaim only. The court concluded this counterclaim was "frivolous" because it "did not have a legal or factual basis."[51] The court awarded $75,889.20 to Clark and Nina to be paid for by the trust, but Kylie would be liable for any amounts above the trust's dwindling assets.

We review an award of costs and attorney fees from a trust dispute for abuse of discretion.[52] A trial court abuses its discretion when its decision rests upon untenable grounds or was made for untenable reasons.[53] RCW 11.96A.150(1) allows a trial court to assess an award of costs and attorney fees against "the assets of the estate or trust involved in the proceedings."

without a showing of prejudice to the losing party.'") (quoting Saleemi v. Doctor's Assocs., Inc., 176 Wn.2d 368, 380, 292 P.2d 108 (2013)).

[50] Kylie also raised counterclaims alleging Clark breached his fiduciary duties. The court did not award costs or fees for defending against those claims.

[51] CP at 521, 525 (FF 102, CL 19).

[52] In re Estate of Evans, 181 Wn. App. 436, 451, 326 P.3d 755 (2014) (citing In re Estate of Black, 153 Wn.2d 152, 173, 102 P.3d 796 (2004) (Black II)).

[53] Id. (citing Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007)).

Nina and Clark argue the "touchstone" for evaluating an award of costs and attorney fees in a TEDRA action is whether Kylie's litigation substantially benefitted the trust.[54] But as this court explained in In re Estate of Evans, the attorney fee provision in TEDRA was amended in 2007, so "the continuing vitality of the substantial benefit requirement is questionable."[55] Since its amendment, RCW 11.96A.150 gives the trial court discretion to consider factors that "may but need not include whether the litigation benefits the estate or trust involved."[56] Thus, the more apt question when deciding to award attorney fees from a trust is whether "both sides advance[d] reasonable, good faith arguments in support of their respective positions" regarding the trust.[57]

A claim is frivolous when it cannot be supported by any rational argument based in law or fact.[58] Kylie has not appealed the trial court's conclusion that her claim was frivolous or its decision to award fees. Because a frivolous claim is, by definition, unreasonable and, here, was unrelated to the trust, the trial court lacked a tenable basis in law or fact to order the trust to pay Clark and Nina's attorney fees.

---

[54] Clark Appellant's Br. at 36 (quoting In re Estate of Black, 116 Wn. App. 476, 490, 66 P.3d 670 (2003) (Black I)); Nina Appellant's Br. at 31 (quoting Black I, 116 Wn. App. at 490).

[55] 181 Wn. App. 436, 452, 326 P.3d 755 (2014)

[56] Id. at 451-52 (quoting LAWS OF 2007, ch. 475 § 5).

[57] Id. at 452 (citing Black I, 116 Wn. App. at 491); see RCW 11.96A.150(1) (court has discretion to award fees from a trust "involved in the proceedings").

[58] See Goldmark v. McKenna, 172 Wn.2d 568, 582, 259 P.3d 1095 (2011) (explaining when an appeal is frivolous for purposes of RCW 4.84.185).

Clark and Nina contend Kylie should be liable for their costs and attorney fees. The trial court concluded that an award of costs and attorney fees was warranted only under RCW 11.96A.150, and that decision has not been appealed. But because the trust should not be responsible for the costs Clark and Nina incurred from defending against Kylie's frivolous claim, the question is whether that statute still allows for an award of costs and attorney fees to Clark and Nina. RCW 11.96A.150(1) also allows for costs and fees to be paid by a "party to the proceedings" or by "any nonprobate asset that is the subject of the proceedings." Because there is no nonprobate asset at issue here, the statute allows for an award of costs and fees from only a "party to the proceedings." And because the decision to award costs and fees to Clark and Nina has not been appealed, Kylie, the only remaining party to the proceedings who brought the frivolous counterclaim, should pay Clark and Nina's costs and attorney fees incurred in defending against her frivolous claim, pursuant to RCW 11.96A.150(1).

III. Trust Termination

The trial court ordered the trust liquidated because the award of costs and attorney fees from it would lower the trust's value below $25,000. The trust contains a "small trust termination" provision that lets the trustees liquidate and terminate the trust if its market value is $25,000 or less.[59] The trial court concluded the trust would have a value below $25,000 after trial because it contained approximately $77,000 in assets at the time of trial, and the award of

---

[59] Ex. 12, at 10.

costs and attorney fees was nearly that much. Because the trust will no longer be responsible for Clark and Nina's attorney fees and costs, it appears it will contain more than $25,000. We reverse the portion of the order liquidating and terminating the trust, subject to any changed circumstances before the court on remand.

IV. Attorney Fees on Appeal

The parties each request their costs and attorney fees on appeal pursuant to RAP 18.1 and RCW 11.96A.150. RAP 18.1 authorizes an award of costs and attorney fees where authorized by law. RCW 11.96A.150(1) authorizes an award of costs and attorney fees from an appeal. RCW 11.96A.150(1) also gives this court the discretion to "consider any and all factors that it deems to be relevant and appropriate." Because Clark and Nina prevail on every issue of consequence and their appeal benefitted the trust, we grant their requests for costs and attorney fees to be determined by a commissioner of this court upon compliance with RAP 18.1. Because Kylie does not prevail on any issue of consequence, including her cross appeal, we deny her request.

RCW 11.96A.150(1) authorizes payment of an award of costs by any party to the proceeding, the trust's assets, or a nonprobate asset that is the subject of the proceedings. Under these circumstances, Kylie is liable for Clark and Nina's costs and reasonable attorney fees from appeal.

The legal conclusion and related order holding Nina liable are reversed. The order holding the trust liable for Nina and Clark's attorney fees and costs from defending against Kylie's frivolous counterclaim is reversed. The conclusion that

Clark did not breach his duties is affirmed. On remand, the trial court must enter a judgment and orders requiring that Kylie pay Nina and Clark's attorney fees from defending against the frivolous counterclaim and must vacate any inconsistent judgments. Therefore, we reverse in part, affirm in part, and remand for proceedings and entry of judgment and orders consistent with this opinion.

_____, J.

WE CONCUR:

_____, J.        _____, A.C.J.
Chun,                                    Andrus,